UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| v. | * |
| | * |
| MICHAEL J. GURRY, RICHARD M. SIMON, SUNRISE LEE, JOSEPH A. ROWAN, and JOHN KAPOOR, | *  Criminal Action No. 16-cr-10343-ADB |
| | * |
| | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON DEFENDANTS' *BATSON* CHALLENGES TO THE GOVERNMENT'S PEREMPTORY STRIKES**

BURROUGHS, D.J.

During jury selection on January 25, 2019, Defendants Michael J. Gurry, Richard M. Simon, Sunrise Lee, Joseph A. Rowan, and John Kapoor (collectively, "Defendants") challenged two of the Government's peremptory strikes under Batson v. Kentucky, 476 U.S. 79 (1986). For the reasons stated below, which are consistent with the reasons stated by this Court at the time, Defendants' Batson objections are OVERRULED.

**I.      LEGAL STANDARD**

The U.S. Supreme Court held in Batson that the Fourteenth Amendment's Equal Protection Clause prohibits prosecutors from exercising peremptory strikes solely on the basis of race. Batson, 476 U.S. at 89. The Supreme Court established a three-part process for trial courts to use when adjudicating a Batson challenge:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Davis v. Ayala, 135 S. Ct. 2187, 2199 (2015) (quoting Snyder v. Louisiana, 552 U.S. 472, 476–77 (2008)).  To establish a prima facie case of discrimination, the defendant must show that the challenged juror is a member of a cognizable racial group and that the facts and "any other relevant circumstances raise an inference" that the prosecution used the peremptory strike to discriminate on the basis of race.  Batson, 476 U.S. at 96–97.  The party challenging the strike bears the burden of proof.  United States v. Girouard, 521 F.3d 110, 113 (1st Cir. 2008).

The First Circuit requires district courts to "articulate the bases of their factual findings related to Batson challenges . . . " and to specifically "state whether it finds the professed reason for a challenged strike to be facially race neutral or inherently discriminatory and why it chooses to credit or discredit the given explanation."  United States v. Perez, 35 F.3d 632, 636 (1st Cir. 1994).  In accordance with this directive, the Court supplements its findings on the record with this order.

## II. DISCUSSION

Jury selection occurred over the course of four days.  All potential jurors were asked to fill out questionnaires that asked about demographic information, financial hardship, and potential bias.  Each potential juror who was not excused for hardship on the basis of his or her questionnaire responses participated in a group and then an individual voir dire.  At the individual voir dire, which averaged several minutes per person, the Court discussed with each potential juror any affirmative responses from the group voir dire, followed up on questions from the written questionnaire, and allowed the Government and Defendants the opportunity for additional follow-up on any responses.  During the final day of jury selection, the

Government exercised peremptory strikes on two people of color.  The Defendants[1] challenged both peremptory strikes under Batson.

### A.     The Government's First Peremptory Strike (Prospective Juror 14)

Defendants made a prima facie showing that the Government's first peremptory strike was exercised on the basis of race by identifying Prospective Juror 14 as a woman of Indian descent who was "the only Indian woman on the panel," [Jan. 25, 2019 Hr'g Tr. ("Hr'g Tr.") at 20:23], and the same race as Defendant Kapoor, [id. at 21:10–26].  See Batson, 476 U.S. at 96–97.

The Government's proffered race-neutral justification for its strike of Prospective Juror 14 was that she had difficulty speaking and understanding English.  [Hr'g Tr. at 20:6–7].  The Government asserted that Prospective Juror 14 wrote in her questionnaire that she had trouble understanding English and stated that she "was a little confused" during the group voir dire.  [Id. at 20:7–11].[2]

The Court found that the strike did not amount to purposeful discrimination.  [Id. at 21:1–2; 21:19–20].  Given the allegations in the indictment and the pre-trial motion practice, it is evident that this trial will involve complex concepts and technical testimony.  The Government's asserted justification for the strike—a concern about the juror's ability to follow along with the testimony—was a legitimate, race-neutral basis to strike Prospective Juror 14 in favor of another juror with a more sophisticated knowledge of English.  [Id. at 20:4–8]; see, e.g., United States v.

---

[1] Defendant Kapoor made the first objection under Batson, and Defendant Simon made the second.  All Defendants joined in both objections.

[2] The Court recognizes that the transcript reflects the Government later stating, "The first strike was because she was the only Indian woman on the panel."  [Hr'g Tr. at 24:25–25:2].  In context, the Court understood the Government to be characterizing the defense's argument against the first strike, rather than making an affirmative statement about the Government's reason for the first strike.  For that reason, the Court does not attribute any weight to this statement on the record.

Gainer, 151 F. App'x 887, 888–89 (11th Cir. 2005) (upholding district court's allowance of a peremptory strike on the basis of prospective juror's limited English proficiency, despite prospective juror's stated belief that "she understood English well enough to follow the proceedings," because of "demonstrated language-based difficulty understanding terms in the indictment" and complexity of banking fraud).  Further, the Government's assessment of Prospective Juror 14's language skills was supported by the voir dire record and by the Court's own observations during the voir dire.[3]

### B. The Government's Second Peremptory Strike (Juror 122)

Defendants made a prima facie showing that the Government's second peremptory strike was exercised on the basis of race by identifying Prospective Juror 122 as an Ethiopian woman of color, [Hr'g Tr. 23:19–24], and stating that there had been a pattern of discrimination by the Government, which used its first two peremptory strikes on people of color, [id. at 23:20–23]. See Batson, 476 U.S. at 96–97.

---

[3] The following exchange occurred during voir dire:

> MR. YEAGER: … [Y]ou answered number 10: Do you have any difficulty reading or understanding English, and you said "yes."
> THE JUROR: Reading. More understanding on the law or anything, I don't understand that.
> THE COURT: Is English your first language?
> THE JUROR: No.
> THE COURT: If we explain the law to you, can you follow along?
> THE JUROR: Yes.
> THE COURT: Did you have any trouble understanding my questions this morning?
> THE JUROR: I understand the questions. But if somebody talk very fast, I don't understand that.
> THE COURT: Okay. Did you understand my questions this morning?
> THE JUROR: Yes.
> THE COURT: Because I talk pretty fast. And if you -- if someone was talking too fast, would you be willing to raise your hand and ask them to slow down?
> THE JUROR: Yes.

Voir Dire Tr. (Jan. 22, 2019) at 83:10–84:5.

4

Case 1:16-cr-10343-ADB   Document 716   Filed 02/01/19   Page 5 of 6

The Government's proffered race-neutral justification for its strike of Prospective Juror 122 was that she was "very unsophisticated," had a high school education, had difficulty filling out the juror questionnaire, and omitted from her questionnaire the fact that her husband was employed at a pharmaceutical company. [Hr'g Tr. at 24:1–2, 25:2–6, 25:9–13, 25:16–17]. The Government also asserted that Prospective Juror 122 might be "close to the [pharmaceutical] industry" because of her husband's employment. [Id. 25:2–6].

The Court found that the strike did not amount to purposeful discrimination. [Id. at 26:2–3]. As with Prospective Juror 14, the Government presented a race-neutral justification for the strike when it identified the juror as a less educated or sophisticated person who may have difficulty following along with technical, complex testimony. See, e.g., United States v. Moeller, 80 F.3d 1053, 1060 (5th Cir. 1996) (holding that the prosecution had articulated a race-neutral reason for striking minority jurors on the basis of their lack of formal education, including one panel member who "was unable to competently fill out the juror questionnaire," given "the complex nature of the conspiracy [charged], and the number of interconnected offenses alleged"). Again, the Court also observed the juror's relative lack of English language fluency. In addition, the Government identified concerns about Juror 122's affiliation with the pharmaceutical industry, a potential cause of bias unrelated to race. This concern was documented in the voir dire record.[4] Finally, the Court does not find that there was a pattern of

---

[4] The following exchange occurred during voir dire:

> MR. WYSHAK: Is your husband employed?
> THE JUROR: Yes.
> MR. WYSHAK: What does he do?
> THE JUROR: He works at Vertex.
> MR. WYSHAK: You didn't fill this out on the questionnaire? Did you see that there was a question about your husband's occupation?
> THE JUROR: I don't know why.

5

discrimination by the Government on the ground that the impaneled jury and alternates included at least three individuals of color.  See United States v. Cruz-Escoto, 476 F.3d 1081, 1090 (9th Cir. 2007) (affirming finding of no racial discrimination where seated jury included two Hispanic people and "challenges at issue only constituted two of the government's six peremptory challenges").

## III.     CONCLUSION

For the foregoing reasons and as stated on the record, Defendants' Batson objections to the Governments first two peremptory strikes are OVERRULED.

**SO ORDERED.**

February 1, 2019                                                        /s/ Allison D. Burroughs
                                                                        ALLISON D. BURROUGHS
                                                                        U.S. DISTRICT JUDGE

---

    MR. WYSHAK: You don't have a problem reading or anything?
    THE JUROR: No.
    MR. WYSHAK: What does he do at Vertex.
    THE JUROR: He work for clinical trials.

Voir Dire Tr. (Jan. 23, 2019) at 152:9–21.