UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * |
| MICHAEL J. GURRY, RICHARD M. SIMON, SUNRISE LEE, JOSEPH A. ROWAN, and JOHN KAPOOR, | * Criminal Action No. 16-cr-10343-ADB |
| | * |
| | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON
DEFENDANT SUNRISE LEE'S MOTION FOR MISTRIAL**

BURROUGHS, D.J.

On September 11, 2018, a grand jury returned the Second Superseding Indictment ("SSI") against Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor, charging them with engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). [ECF No. 419]. Trial on the charges against Defendants Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor (collectively, "Defendants") began on January 28, 2019. [ECF No. 703]. On March 1, 2019, counsel for Ms. Lee made an oral motion for a mistrial, which was supplemented by a written motion ("Motion for Mistrial"). [ECF No. 765]. For the following reasons, which are consistent with the reasons stated by this Court on March 1, 2019, and again on March 5, 2019, the Motion for Mistrial is DENIED.

**I.    BACKGROUND**

On March 1, 2019, during direct examination of witness Alec Burlakoff, the Government sought to admit a document marked for identification as Exhibit 664, which was an email discussing Ms. Lee that was sent to Mr. Babich under a pseudonym ("Exhibit 664" or "the

Exhibit"). Trial Tr. Mar. 1, 2019, 197:2–10. The email purported to provide links to websites showing Ms. Lee's involvement with an escort service. Id. at 197:25–198:2. Counsel for Ms. Lee objected to the admission of the document and requested a sidebar. Id. at 197:11–15.

At sidebar, the Government argued that the document was relevant and "highly probative" because Mr. Babich and Mr. Burlakoff discussed Exhibit 664, concluded that the information on Ms. Lee's resume was inconsistent with the information provided in Exhibit 664, and discussed the information with Dr. Kapoor. Id. at 197:24–198:9. Counsel for Ms. Lee argued that Exhibit 664 was "highly inflammatory," "not probative of anything at all," and "meant to slander Ms. Lee." Id. at 198:10–12. He added that Mr. Babich had investigated the email at the time and discovered that the likely person behind the pseudonym was Ms. Lee's ex-boyfriend. Id. at 198:15–19. The Court prohibited Exhibit 664 from being admitted on the ground that it was inflammatory, id. at 200:5–8, but ruled that the Government could ask the witness about inaccuracies that may have been on Ms. Lee's resume and about the corporate culture at Insys to the extent relevant to Insys' decision to hire Ms. Lee and reasons why Insys might choose to hire an individual not qualified for the job, id. at 199:22–24, 200:2–3.

The direct examination resumed, and the Government asked Mr. Burlakoff, over the Defendants' objection, whether Mr. Babich had received salacious information about Ms. Lee. Id. at 200:17–24. The Court struck the Government's follow-up question about whether Mr. Babich was provided information that Ms. Lee was running an escort service and convened a second sidebar. Id. at 201:7–14. At sidebar, the Court provided further clarification and specifically identified what information the Government could reference on direct examination as relevant to the issues being tried and not unduly prejudicial. See id. at 201:16–23. The Court reiterated that Exhibit 664 would not be admitted but that the Government was permitted to

question Mr. Burlakoff about information contained in the Exhibit in light of his earlier testimony.  Id. at 202:20–22.

Still at sidebar, counsel for Ms. Lee renewed his objection that the information was not admissible because it was unfairly prejudicial.  Id. at 203:12–15 ("It's a smear campaign by somebody with a grudge . . . It's not admissible.  It's 403."), 204:9–12 (stating that any relevance "does not in any way outweigh the prejudice to her").  The Government argued that the information was relevant because it showed notice to executives at Insys and demonstrated that Ms. Lee was unqualified to hold her position.  Id. at 204:2–8.  The Court allowed limited testimony on the basis of notice but not for the truth and reiterated the relevance of the testimony.  See id. at 202:22–24; see also 204:15–16 ("If [Insys] hired her and they keep [Ms. Lee] on because of this skill set, it's relevant."), 205:10–14 ("There's no evidence whether it's credible or not.  If they have a discussion about it and . . . whether it's true or not, Mr. Kapoor says I don't care what [Ms. Lee] does as long as she can sell my drug, that's relevant."); 207:1–5 (providing limiting instruction).  The Court instructed the Government "to keep the salacious aspect to an absolute minimum."  Id. at 206:3–9.

Ms. Lee's counsel requested a limiting instruction focusing on the hearsay.  Id. at 206:10–12.  Once back before the jury, the Court gave a limiting instruction that strongly emphasized that the jury should only consider the information from Exhibit 664 for the effect it may have had on the company and not for the truth.[1]  Id. at 206:16–207:21.  The Court offered to

---

[1] The full text of the limiting instruction was as follows:

> I think you're about to hear testimony to the effect that the company got some information about Ms. Lee that suggested that she might not be qualified for the job. They did some investigation on that, and then you'll hear testimony to that effect. But the letter that they received is anonymized, to a certain extent. The letter does not -- and I cannot emphasize this strongly enough -- does not come in

3

renew the instruction at the request of counsel if it became necessary during the course of the testimony.  Id. at 207:14–15.

Mr. Burlakoff went on to testify that he met Ms. Lee in a strip club where she worked; that Mr. Babich told him about an email he received about Ms. Lee; and that he, Mr. Babich, and Ms. Lee investigated the email and concluded that it came from Ms. Lee's ex-fiancé.  Id. at 207:23–208:15.  Mr. Burlakoff agreed that the email made disparaging remarks about Ms. Lee, questioned her hiring, and provided the websites identified in the email for Mr. Babich to review.  Id. at 208:19–209:5.  Mr. Burlakoff explained that, at Mr. Babich's instruction, he visited one of the websites and observed topless photos of Ms. Lee.  Id. at 209:11–210:1.  Finally, Mr. Burlakoff testified that Mr. Babich brought this information to Dr. Kapoor, who allowed Ms. Lee to remain at Insys because of her success to-date but required that she take the photos down.  Id. at 210:3–22.

At the conclusion of direct examination for the day, counsel for Ms. Lee moved for a mistrial "based on admission of the salacious evidence."  Id. at 218:12–17.  Specifically, counsel for Ms. Lee argued that admission of the evidence "was done for the purpose of prejudicing [Lee]" and "was the subject of pretrial motions *in limine* and a motion for severance."  Id. at

---

> for the truth of the matter asserted. It comes in for the fact that the company gets this information and they take certain steps in response to the information. But the person that wrote -- I don't even know that we know who wrote the letter. That person is certainly not here. They're not testifying. There may be issues of bias. We don't have any way to know if what they're saying is true or not. You're to consider this information only [for] the effect that [it] had on the company and what they did in response to receiving this information. . . . Obviously, the information contained in the letter is somewhat salacious, which is the kind of information that sticks in your head which is why I want to be so strong about this instruction. You cannot consider it for the truth of what's alleged. You're only to consider it for what actions the company takes in response.

Trial Tr. Mar. 1, 2019, 206:20–207:21.

4

218:14–16.  Further, he stated that he did not believe that the evidence would have been admitted if Ms. Lee was on trial by herself, rather than being trial along with four other defendants.  Id. at 218:16–17.

The Court denied the motion from the bench, but granted leave to renew the motion in writing.  Id. at 218:20–22.  In denying the oral motion from the bench, the Court stated:

> The company's response to [the] information [in the e-mail] is relevant.  It may well come in if [Ms. Lee] was tried alone because her qualifications for the job would also be at issue. . . . I think the way we handled it, the information came in in as unprejudicial a way as was warranted. So I thought that I tried to keep the inflammatory part of it down.

Id. at 218:23–219:5.

Counsel for Ms. Lee submitted the pending Motion for Mistrial on March 3, 2019, which raised the issue of propensity evidence for the first time.  [ECF No. 765].  After reviewing the briefing submitted, the Court again denied the request for a mistrial on March 5, 2019 and offered to give an instruction on propensity evidence.  Trial Tr. Mar. 5, 2019, 24:3–6.  The Court consulted with Defendants' counsel about the content and timing of the instruction.  Id. at 24:7–25:4.  The Court gave the jury an instruction before trial resumed that reiterated the Government's burden and explained that the jury may not consider propensity evidence.[2]  Id. at 51:22–52:21.

---

[2] The full text of the limiting instruction was as follows:

> One other thing that I wanted to mention to you -- and this may go without saying, but it's important, so I want to emphasize it.  As we discussed before, for the Government to convict someone, they have to prove that that person committed the crime charged against them beyond a reasonable doubt and that requires them to prove each element of the offense beyond a reasonable doubt. You're not allowed to consider what we call propensity evidence.  And that means that if you don't like someone or you don't like their job or you don't like something about what they've done or said, you can't say because I don't like this person or I don't like their job, that makes it more likely that they committed this

5

## II.     DISCUSSION

The decision to declare a mistrial rests within the trial court's sound discretion. United States v. De Jongh, 937 F.2d 1, 3 (1st Cir. 1991).  "Declaring a mistrial," however, "is a last resort, only to be implemented if the taint [from improper evidence] is ineradicable . . . ." United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993).  Where, as here, no improper evidence came before the jury, there are no grounds for a mistrial, and the Motion for Mistrial must be denied.

A review of the trial transcript clearly indicates that no improper evidence was presented to the jury.  See Trial Tr. Mar. 1, 2019, 207:23–210:22.  The relevance of Mr. Burlakoff's testimony related to Ms. Lee's credentials and Insys' hiring practices outweighed any prejudice that may have stemmed from the permitted testimony, making the testimony admissible under Rule 403.  See Fed. R. Evid. 403.  The only portion of Mr. Burlakoff's testimony that could conceivably be considered "salacious" concerns the topless photos of Ms. Lee.  Id. at 209:11–210:1.  However, this testimony was not allowed in for the truth and was directly relevant to the issue of notice and what information Mr. Babich presented to Dr. Kapoor.  See id. at 210:3–22.[3]

---

> offense. . . .  [J]ust to give you an example.  If someone admits to being a bank robber, that doesn't make it more likely that they committed another crime. Okay?  So you can't consider propensity evidence.  You have to focus on the elements of the offense and not think that just because there's something that you like about someone, it made them less likely to do it, or because [there's] something you don't like about them, then it made them more likely to do it.  You can't consider that sort of evidence.

Trial Tr. Mar. 5, 2019, 51:22–52:21.

[3] Any prejudicial effect stemming from the testimony about Ms. Lee's purported topless photos was further reduced by the limiting and cautionary instructions, particularly the Court's admonition that propensity evidence was not to be considered.  Trial Tr. Mar. 5, 2019, 51:22–52:21.

In addition, the Court prohibited the Government from admitting Exhibit 664 into evidence on the grounds that the Exhibit as a whole was inflammatory and instructed the Government "to keep the salacious aspect to an absolute minimum." Id. at 200:5–8, 202:20–22, 206:3–9. Finally, the Court was responsive to counsel's requests for limiting and cautionary instructions and gave two strongly-worded instructions to the jury. See id. at 206:16–207:21; Trial Tr. Mar. 5, 2019, 51:22–52:21. Thus, the evidence was properly before the jury and the Court's limitations on how it was presented ensured that the probative value outweighed any danger of unfair prejudice.[4]

### III. CONCLUSION

Accordingly, for the foregoing reasons and as stated on the record, Defendant Lee's Motion for Mistrial [ECF No. 765] is DENIED.

**SO ORDERED.**

March 15, 2019                                      /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE

---

[4] Here, even assuming that evidence was improperly before the jury, the Court's curative instructions were sufficient to mitigate any unfair prejudice. Under Sepulveda, when addressing a motion for mistrial based on a claim of improper evidence, trial courts have three tools to cure a defect stemming from improper evidence: striking the relevant testimony, giving a curative instruction, and, as a last resort, declaring a mistrial. See Sepulveda, 15 F.3d at 1184 ("When, as now, a motion to declare a mistrial has its genesis in a claim that improper evidence came before the jury, the court must first weigh the claim of impropriety and, if that claim is well founded, strike the offending evidence. Next, unless the court believes that the evidence is seriously prejudicial and that a curative instruction will be an insufficient antidote, the court should proceed with the trial after instructing the jury to disregard the evidence. Declaring a mistrial is a last resort, only to be implemented if the taint is ineradicable . . . .").