UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>RICHARD M. SIMON, et al., )<br>)<br>Defendants. )<br>) | Criminal No. 16-10343-ADB |

**Government's Opposition to**
**Simon's Motion for Mistrial, to Strike Testimony, or for an Evidentiary Hearing**

On March 15, 2019, after learning that the government had spoken with its witness, Nathan Tyron Rustin, during the recess in his direct examination the evening of March 14, 2019 and the morning of March 15, 2019, defendant Richard M. Simon moved orally for a mistrial. (3/15/19 Tr. 91092.) This Court denied it. (*Id.* at 92.) Simon has now renewed that motion, seeking a mistrial, or, in the alternative, to strike Rustin's testimony, or, if the Court denies both of those requests, for an evidentiary hearing about the government's meetings with Rustin. (Simon Motion, Dkt. No. 780.) Simon contends that as a result of the government's two meetings with Rustin, Rustin's March 15, 2019 testimony "directly contradicted the exculpatory testimony he had provided on March 14." (Simon Motion at 2.) This, Simon says, "gives rise to serious questions concerning the Government's interactions with him, including whether he was pressured, intimidated or coached into recanting his exculpatory testimony." (*Id.*) He claims, however, that he was "not in a position to delve into the details in front of the jury moments after the startling turn of events." (*Id.*) The Court should deny Simon's motion.

The Supreme Court has said that the "judge's power to control the progress and, within the limits of the adversary system, the shape of the trial includes broad power to sequester witnesses

before, during, and after their testimony." *Geders v. United States*, 425 U.S. 80, 87 (1976); *United States v. Sepulveda*, 15 F.3d 1161, 1175-1176 (1st Cir. 1993). Fed. R. Evid. 615, which governs the sequestration of witnesses, recognizes the court's authority by providing that at a party's request, or on its own, "the court must order witnesses excluded so that they cannot hear other witnesses' testimony." Fed. R. Evid. 615. By its plain language, Rule 615 does not address whether a trial attorney may talk with his or her own witness during a break in that witness's testimony. But this District has neither a local rule nor a local practice precluding a lawyer, including the government, from conferring with his or her own witness during a break in that witness's direct examination, as Simon recognizes.[1] (*See* Simon Motion at 3 n.2.) *Compare, e.g.,* Local Rules of the District Court of Maine, Rule 39(c)(2) ("Upon oral motion of a party or on its own motion, the Court may order on such terms as it may prescribe, that a witness under examination in court shall not discuss the witness's testimony, including during any recess taken during the examination or before the witness is finally excused."); *United States v. Mangana*, 127 F.3d 1, 5 (1st Cir. 1997) (noting the "long-standing custom in the district [of Maine, prior to promulgation of the Local Rule] that precluded counsel from conferring with a witness until the witness had been excused from the stand."). The government therefore did not violate any rule or practice in speaking with Rustin during the recess in his direct examination.

Simon's suggestion that the "complete reversal of Mr. Rustin's exculpatory testimony" raises the question whether the government "pressured, intimidated or coached [him] into recanting his exculpatory testimony" is without merit. [Simon Motion at 2; *see id.* at 4 ("it seems

---

[1] It is, however, the practice in this District that a lawyer may not confer with his or her own witness after completion of the witness's direct examination.

incontrovertible that something happened").)  First, as a factual matter, this case does not involve the admission of improper evidence.  Rustin's testimony on March 14 was not exculpatory, as Simon claims, particularly in light of the exhibits to which his testimony referred.  For example, Rustin testified that he was "not aware of an agreement" with Dr. Judson Somerville regarding the amount of Subsys Somerville was supposed to be prescribing in each refill.  (3/14/19 Tr. 200.)  But the email from Simon about which Rustin was testifying at the time instructed Rustin to "[d]rill into Kike's head that every refill has to be 180 to 240 [units], etc., and that Dr. Somerville *agreed* to do this."  (Ex. 1513 (emphasis added); 3/14/19 Tr. 200; *see* 3/15/19 Tr. 54, 56.)  Moreover, Rustin testified on March 14 that he had told Kike that the refills had to be for more units "[b]ecause Dr. Somerville had agreed to do this."  (3/14/19 Tr. 201-202.)  Rustin's March 15 testimony about Exhibit 224 (Simon's email of instructions to his sales team) and an agreement between Simon and Somerville was not a complete reversal of his March 14 testimony, but a clarification of responses to "questioning that was unclear to [him]."[2]  (3/15/19 Tr. 45; *see* 3/15/19 Tr. 41-47; *see also* 3/14/19 Tr. 194.)  "I guess there was a misunderstanding," Rustin said, "I thought you were asking me if I had an agreement with Dr. Somerville, and I said no."  (3/15/19 Tr. 33; *see also* 3/15/19 Tr. 46 ("I was confused.  Once it [which agreement] is cleared up, then yeah.  So there may be some inaccuracies there, but I was confused. . . . You have to keep in mind

---

[2] Simon asks why, if the government knew that Rustin had provided false testimony on March 14, it withheld that from the defense. (Simon Motion at 5 n.3.)  The government did not "know" Rustin's testimony was "false," because it was not.  *Cf.* Rule 3.3 of the ABA Model Rules of Professional Conduct ("candor toward the tribunal").  Some of the questions confused Rustin and his answers were therefore somewhat inconsistent or unclear rather than false.

that I'm getting rapid-fire questions.  I'm sitting up here on a stand.  I'm under a lot of duress.  I'm under a lot of stress.  I'm doing the best to answer the questions.")

Second, Simon's claim that the government pressured Rustin into changing his testimony is completely speculative and unsupported by the evidence.  But to the extent that Simon believed that was the case, he was "not without weapons to cope with [a] 'coached' witness[]." *Geders*, 425 U.S. at 89.  "Skillful cross-examination" is a powerful tool to raise questions about or undermine a witness's credibility and memory.  *See id.* at 89-90; *see also Magana*, 127 F.3d at 6 (approving the district court's response to improper evidence, in permitting counsel to examine the witness about her conversation with the prosecutor).  And although Simon complains that he had "no meaningful opportunity to explore the circumstances" that led to the variation in Rustin's testimony from March 14 to March 15, the record suggests otherwise.  The government questioned Rustin during direct examination about the meetings it had had with him during the recess, identifying who was present and how long the conversations lasted.  (3/15/19 Tr. 33.)  Simon and Kapoor then both cross-examined Rustin at length about the testimony and exhibits at issue.  Kapoor, in particular, cross-examined Rustin about his conversations with the government between his testimony on March 14 and March 15 and the discrepancies Kapoor saw between the two days' testimony.  (*See, e.g.,* 3/15/19 Tr. 45-46, 48-49, 54-56.)  Kapoor asked Rustin if he was "under a lot of pressure" on the stand.  (3/15/19 Tr. 38.)  Rustin agreed that he was, but denied that anyone was putting pressure on him: it was "[j]ust the enormity of the situation.  It's very overwhelming, and it's a little intimidating."  (3/15/19 Tr. 38.)  Moreover, Kapoor was the first defense counsel to cross-examine Rustin, which gave Simon additional time before he began his

cross-examination of Rustin.[3]  All of this undercuts Simon's claim that he was not "in a position to delve into the details" of the government's meetings with Simon during his cross-examination.[4] And to the extent Simon did not want to "delve into the details" in the jury's presence, at least in the first instance, he could have asked for a *voir dire* of Rustin outside the presence of the jury. *See Magana*, 127 F.3d at 6.  But he did not.

The decision whether to grant a mistrial is reserved to the "broad discretion" of the trial judge."  *Renico v. Lett*, 130 S. Ct. 1855, 1863 (2010).  In a case involving the admission of purportedly improper evidence, "[d]eclaring a mistrial is a last resort, only to be implemented if the taint is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair." *United States v. Apicelli*, 839 F.3d 75, 86 (1st Cir. 2016) (citation omitted); *see also United States v. DeJongh*, 937 F.2d 1, 3 (1st Cir. 1991) (finding no abuse of discretion in district court's refusal to grant a mistrial based upon the prosecutor's meeting with the government witness prior to her cross-examination and noting that the defense, the court, and the jury were fully informed of the meeting in ample time to assess their effect on the witness's credibility).  Simon cannot satisfy this standard, because the admission of Rustin's testimony was not improper.

---

[3] Counsel for John Kapoor also suggested that the government had "browbeaten" and "badgered" Rustin into changing his testimony.  (3/15/19 Tr. 31-32.)

[4] Questions about such conferences are regular fodder for cross-examination, given this District's practice of allowing a lawyer to confer with his or her witness during a recess during direct examination.

Simon's other suggested "cures" should also be rejected. In *Sepulveda*, the First Circuit stated that if a defendant's claim that the jury heard improper evidence is well-founded, the court should strike the offending evidence and give a curative instruction. 15 F.3d at 1184; *see Magana*, 127 F.3d at 6. But Simon's claim is not well-founded. Simon has offered nothing other than baseless speculation that the government must have done something wrong. This is not sufficient to warrant any sanction, let alone the extreme sanction of striking Rustin's testimony.

Finally, the district court should deny Simon's request for an evidentiary hearing. "The test for granting an evidentiary hearing in a criminal case [is] substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or dispute?" *United States v. Allen*, 573 F.3d 42, 50-51 (1st Cir. 2009) (quoting *United States v. Vilches–Navarrete*, 523 F.3d 1, 15 (1st Cir. 2008) (quotation marks and citation omitted) (concluding that district court did not abuse its discretion in failing to hold evidentiary hearing on motion to suppress)). The district court has "considerable discretion in determining the need for, and the utility of, evidentiary hearings." *Allen*, 573 F.3d at 50; *see De Jongh*, 937 F.3d at 3 (affirming district court's refusal to strike testimony of witness who conferred with prosecutor after her direct and before her cross examination began, where there was no sequestration order and the defense, the court, and the jury were told of the meeting and the witness was cross-examined about it); *cf. United States v. Graham*, 146 F.3d 6, 9 (1st Cir. 1998) (describing the district court's decision whether to grant an evidentiary hearing on a selective prosecution claim as a "judgment call . . . as to the force and specificity of the allegations, the strength of the response, and the likelihood that a hearing would be helpful." (citations omitted)).

Simon's groundless and unsupported allegations of suspected wrongdoing do not justify his request for an evidentiary hearing.  This is even more apparent given that Simon knew about Rustin's conferences with the government prior to his cross-examination of Rustin and therefore had the opportunity to cross-examine Rustin on the issue, and that Simon could have, but did not, seek a *voir dire* of Rustin.[5]  What Simon seeks is nothing more than a fishing expedition based on the flimsiest of premises, and this Court should deny his request.

Accordingly, the government respectfully requests that the Court deny Simon's motion for mistrial, to strike testimony, or for an evidentiary hearing.

                Respectfully submitted,

                ANDREW E. LELLING
                United States Attorney

By:   */s/*
      K. NATHANIEL YEAGER
      FRED M. WYSHAK, JR.
      DAVID G. LAZARUS
      Assistant U.S. Attorneys
      John Joseph Moakley U.S. Courthouse
      One Courthouse Way, Suite 9200
      Boston, Massachusetts 02210
      (617) 748-3100
      nathaniel.yeager@usdoj.gov
      fred.wyshak@usdoj.gov
      david.lazarus2@usdoj.gov

**CERTIFICATE OF SERVICE**

I, _K. Nathaniel Yeager_____, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

---

[5] Moreover, Simon did not ask for an evidentiary hearing until Rustin had completed his testimony and left the District.

By: /s/

By: /s/