UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| | * |
| v. | * |
| | * |
| MICHAEL J. GURRY, RICHARD M. SIMON, SUNRISE LEE, JOSEPH A. ROWAN, and JOHN KAPOOR, | * Criminal Action No. 16-cr-10343-ADB |
| | * |
| | * |
| | * |
| Defendants. | * |

**MEMORANDUM AND ORDER ON DEFENDANT RICHARD SIMON'S MOTION FOR MISTRIAL, TO STRIKE TESTIMONY, OR FOR AN EVIDENTIARY HEARING**

BURROUGHS, D.J.

On September 11, 2018, a grand jury returned the Second Superseding Indictment against Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor, charging them with engaging in a racketeering conspiracy in violation of 18 U.S.C. § 1962(d). [ECF No. 419]. Trial on the charges against Defendants Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor (collectively, "Defendants") began on January 28, 2019. [ECF No. 703]. On March 15, 2019, counsel for Mr. Simon made an oral motion for a mistrial and sought an evidentiary hearing, which was supplemented by a written motion ("Motion for Mistrial"). [ECF No. 780]. For the following reasons, which are consistent with the Court's ruling on March 15, 2019, the Motion for Mistrial is DENIED.

**I.    BACKGROUND**

On March 14, 2019, the Government elicited the following information from witness Nathan Tyler Rustin on direct examination concerning agreements with named co-conspirator Dr. Judson Somerville:

Q. Read number one [on Exhibit No. 224] there.

> A. "This is task number one. I want examples on our next call of the plan you have created with your top customers to get a specific number of scripts per week that is mutually agreed to and an outline of how you will hold yourselves and your customers to this plan."
> Q. Mr. Rustin, you received this direction from Rich Simon; is that correct?
> A. Yes.
> Q. What did you do when you got this direction? Did you go out and did you make agreements with your customers?
>     MR. TYRRELL: Objection. Leading.
> BY MR. YEAGER:
> Q. What did you do after you got this?
> A. No. I did not make any kind of agreements with any customers.
> Q. Why not?
> A. Because it's -- that's not the right way to do the job.
> Q. What do you mean?
> A. It's very unusual to go into an agreement and have a plan with a physician.
> Q. When you say "very unusual," have you ever done it?
> A. No, I have not.
> Q. Are you aware it was done with regard to Judson Somerville?
> A. No, I'm not.
> Q. You're not?
> A. No.

Trial Tr. Mar. 14, 2019, 193:23–194:25.  In addition, when asked, "Did you participate in any conversation with Judson Somerville or Rich Simon in which an agreement was reached?"  Mr. Rustin responded "No."  Id. at 200:22–24.

The next day, Defendants requested a sidebar during Mr. Rustin's testimony to raise their concern that Mr. Rustin was "browbeaten overnight into changing his testimony."  Trial Tr. Mar. 15, 2019, 31:5–11.  Counsel for Dr. Kapoor indicated that the Government's direct examination was "inappropriate" and "clearly designed to reverse [Mr. Rustin's] testimony" from the previous day.  Id. at 31:14–32:3.  Counsel for Mr. Simon voiced his concern and informed the Court that he might "ask for an evidentiary hearing on what happened last night" depending on Mr. Rustin's continued testimony.  Id. at 32:6–18.

Following the sidebar, the Government asked Mr. Rustin to confirm that he had met with members of the prosecution team and federal agents the afternoon of March 14 and again the

morning of March 15.  Id. at 33:5–15; see also id. at 48:5–8, 23–25 (discussing content of discussions with the Government); id. at 55:5–10 (same).  Mr. Rustin then gave the following testimony about agreements with Dr. Somerville:

> Q. I'm asking you this question about your testimony yesterday, sir. When you testified yesterday that there was not an agreement, can you explain what you meant -- what your understanding of agreement was when I asked you that question?
> A. I understood -- I guess there was a misunderstanding. I thought you were asking me if I had an agreement with Dr. Somerville, and I said no. There were two other agreements that were mentioned yesterday.  One was an agreement that Rich [Simon], when he was a district manager, he sent out to the entire San Francisco team, saying work with your three doctors that you've identified who should be speakers, form a plan with them, have an agreement with them, hold them accountable. That was one agreement. And the other agreement was an agreement that he and Dr. Somerville had about increasing the number of units when he prescribed Subsys.

Id. at 33:16–34:9.

On cross-examination by counsel for Dr. Kapoor, Mr. Rustin was asked if he "recall[ed] telling the jury yesterday that [he] [was] not aware of there being an agreement and a plan . . . with Dr. Somerville."  Id. at 42:21–23.  Mr. Rustin replied, "I said that for me personally.  I was not aware of an agreement between the two of us.  However, there was an agreement between Rich [Simon] and Dr. Somerville."  Id. at 42:24–43:1.  Before counsel for Dr. Kapoor could impeach Mr. Rustin with testimony from the prior day, the Government requested a sidebar.  Id. at 43:3–7.  At sidebar, the Government did not object to the impeachment but stated its belief that "[Mr. Rustin] was confused yesterday" because "[t]here's a bunch of different agreements."  Id. at 43:18–21.  The Court allowed the cross-examination to continue.  Id. at 44:4–5.

Counsel for Dr. Kapoor continued cross-examination:

> Q. . . . . When you were asked yesterday, you didn't understand that question to be an agreement about a number of units, right?
> A. The questioning was unclear to me.  We were talking about three -- in my mind as we're going through this, it was confusing because we're talking about three agreements.  We're talking about one with Dr. Somerville, an agreement that Rich

3

> [Simon] and Dr. Somerville had regarding increasing the number of units for the prescriptions. There was another agreement that was outlined in an email that was sent out from Rich [Simon] to the team that we worked on saying, hey, have an agreement with the physicians that you're calling on, and have a plan, hold them accountable and so on. Then as I'm getting questioned, there were some questions saying me specifically, have you done this? Do you have an agreement? So in the midst of all this questioning and the three different agreements that we were talking about, I was confused. Once it is cleared up, then yeah. So there may be some inaccuracies there, but I was confused.
> . . . .
> Q. So when you were asked yesterday, you didn't think that question about an agreement went to an agreement on the number of units, right? Because that's why you said that you weren't aware of any.
> A. The question that I was given yesterday, I thought it was directly asked if I had an agreement with Dr. Somerville, and so that is why I said no. You have to keep in mind that I'm getting rapid-fire questions. I'm sitting up here on a stand. I'm under a lot of duress. I'm under a lot of stress. I'm doing the best to answer the questions. But once it was clarified, again were talking about three different agreements here. One for me specifically, one for Rich [Simon] and the team that I worked on, and one for Rich [Simon] and Dr. Somerville. So I was confused.

Id. at 45:9–46:4, 46:8–22.[1]

At the morning break in the proceedings, counsel for Mr. Simon moved for a mistrial "based upon what's transpired with respect to Mr. Rustin." Id. at 91:21–92:2. Specifically, counsel for Mr. Simon stated that he had "serious concerns" that Mr. Rustin had been "browbeaten . . . pressured . . . coached" by the prosecution in the two meetings following his March 14 testimony. Id. In the alternative, he requested an opportunity to question the federal

---

[1] Cross-examination by counsel for Mr. Simon followed:

> THE COURT: Hold on. The question was -- this is the question you should answer, Mr. Rustin: As far as you're aware, nobody had an agreement with Dr. Somerville for a specific number of prescriptions per week; is that correct?
> BY MR. TYRRELL:
> Q. Yes or no.
> A. I was not aware of that.

Trial Tr. Mar. 15, 2019, 79:20–80:1.

4

agents who were present at the two meetings about what was said at the meetings. Id. at 92:3–5. The Court denied the motion from the bench but granted leave to file a written motion for an evidentiary hearing with testimony from the federal agents. Id. at 92:6–10 ("The motion is denied. If you want to do a written motion about why you think you should be able to question the agents or if the government wants to agree to have the agents questioned, [the Court] will make time for that.").

The following trial day, March 18, 2019, counsel for Mr. Simon advised the Court that he would be submitting a written motion for a mistrial. Trial Tr. Mar. 18, 2019, 11:4–8. The Government notified the Court that it objected to any evidentiary hearing regarding meetings with Mr. Rustin on March 14 and 15. Id. at 11:11–13. Later that day, counsel for Mr. Simon submitted the pending Motion for Mistrial. [ECF No. 780]. The Government filed an opposition brief on March 29, 2019. [ECF No. 803]. Mr. Simon responded on April 1, 2019. [ECF No. 815].

## II.   DISCUSSION

The decision to declare a mistrial rests within the trial court's sound discretion. United States v. De Jongh, 937 F.2d 1, 3 (1st Cir. 1991). "Declaring a mistrial," however, "is a last resort, only to be implemented if the taint [from improper evidence] is ineradicable . . . ." United States v. Sepulveda, 15 F.3d 1161, 1184 (1st Cir. 1993). Where, as here, no improper evidence came before the jury and there is no evidence of misconduct by the Government, there are no grounds for a mistrial and no basis for holding an evidentiary hearing. Accordingly, the Motion for Mistrial is denied.

### A.     There Was No Improper Evidence Requiring the Striking of Testimony or Declaration of a Mistrial.

A review of the transcripts from direct examination of Mr. Rustin reveals that no improper testimony was presented to the jury.  Although Mr. Rustin's testimony varied from day-to-day, the variances are typical witness contradictions, which can be attributed to his self-admitted confusion and nervousness.  See Trial Tr. Mar. 15, 2019, 46:15–22 ("You have to keep in mind that I'm getting rapid-fire questions.  I'm sitting up here on a stand.  I'm under a lot of duress.  I'm under a lot of stress.  I'm doing the best to answer the questions. . . . I was confused.").

In addition, these contradictions and Mr. Rustin's meetings with the prosecution and federal agents were explored fully on cross-examination and without limitation.  See, e.g., id. at 32:1–5 ("I believe this witness is being badgered into changing his testimony overnight.  I'm going to cross extensively about what happened overnight."); id. at 48:5–7 ("Sir, how much of the 40-minute conversation last night did the government spend going over what you said about an agreement?"); id. at 48:23–24 ("And the government did talk to you overnight about that question and answer on the agreement from yesterday, right?"); id. at 55:5–12 ("After we wrapped up yesterday in court, did the government talk to you about this testimony? . . . Did they talk to you about the email? . . . Did they show you the email either last night or this morning again before court?").[2]

---

[2] Counsel for Mr. Simon contends that a mistrial is warranted because the Government's failure to notify the Defendants that Mr. Rustin "would change his testimony on a critical issue" allegedly deprived Mr. Simon of his right to confront Mr. Rustin and to have a "meaningful opportunity" to explore what led to the change in his testimony. [ECF No. 780 at 5].  The Defendants cross-examined Mr. Rustin and had ample opportunity to ask him about the meetings on March 14 and 15.  There was no Confrontation Clause issue.

As an alternative to declaring a mistrial, counsel for Mr. Simon asks that the Court strike Mr. Rustin's March 15, 2019 testimony. See [ECF No. 780 at 2]. Because no improper testimony came before the jury, it is not necessary to strike any of Mr. Rustin's testimony. Cf. Sepulveda, 15 F.3d at 1184 ("When . . . a motion to declare a mistrial has its genesis in a claim that improper evidence came before the jury, the court must first weigh the claim of impropriety and, if that claim is well founded, strike the offending evidence.").

      **B.    There Was No Evidence of Misconduct by the Government and an Evidentiary Hearing Is Not Required.**

The parties agree that local practice in the District of Massachusetts allows for parties to confer with their witnesses during a break in direct examination. See [ECF No. 780 at 3 n.2; ECF No. 803 at 2]. Counsel for Mr. Simon does not challenge the fact of the meetings but alleges that it "seems interconvertible that something happened in one or both of the meetings . . . that caused [Mr. Rustin] to recant what had been clear and unequivocal exculpatory testimony on March 14." [ECF No. 780 at 4]. He seeks an evidentiary hearing to "inquire into the circumstances of the two meetings with Mr. Rustin." [Id. at 6].

The test for granting a request for an evidentiary hearing in a criminal case is whether the defendant made "a sufficient threshold showing that material facts were in doubt or dispute." United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. 1990). The Court has broad discretion to grant or deny a request for an evidentiary hearing. See United States v. Allen, 573 F.3d 42, 50–51 (1st Cir. 2009) (observing that district courts have "considerable discretion" to determine the need for evidentiary hearings). Here, the only material fact that could be construed as disputed was the content of the discussions at the two meetings on March 14 and 15 because the parties do not disagree as to when the meetings occurred or who was present. As described supra, however, the Defendants had a full opportunity to cross-examine Mr. Rustin on these precise

facts.  Any allegations of misconduct by the Government, particularly in light of the cross-examination, are speculative, and the Court simply cannot infer from the contradictions in Mr. Rustin's testimony that it was changed at the behest of the Government or that there was any impropriety on the part of the Government.  Thus, Mr. Simon's request for an evidentiary hearing does not meet the threshold requirement for an evidentiary hearing, and the Court, in its discretion, denies the request.

### III.   CONCLUSION

Accordingly, for the foregoing reasons and as stated on the record on March 15, 2019, the Motion for Mistrial [ECF No. 780] is DENIED.

**SO ORDERED.**

April 10, 2019                                                                              /s/ Allison D. Burroughs
                                                                                                  ALLISON D. BURROUGHS
                                                                                                  U.S. DISTRICT JUDGE