# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD SIMON | No. 16-cr-10343-ADB |

## **DECLARATION OF RICHARD SIMON**

I, Richard Simon, state as follows:

1. I am a defendant in the above-captioned case.

2. I worked at Insys from September 2012 through March 2016, initially as a Regional Sales Manager, and later, as the National Sales Director.

3. During my tenure, I was aware that Insys received a subpoena from the Department of Justice concerning the company's marketing and sale of Subsys.

4. I understand that shortly after receiving the subpoena, Insys hired the Skadden law firm to conduct an internal investigation, identify any compliance issues, and advise the company about how to remediate such issues.

5. I understand that Skadden interviewed numerous Insys employees and reviewed a wide range of company practices (including the Insys Speaker Program ("ISP") and Insurance Reimbursement Center ("IRC").

6. As part of its investigation, Skadden interviewed me. I provided truthful, accurate, and complete information during this interview.

1

7.      I understand that, working closely with in-house lawyers, such as General Counsel Franc Del Fosse and Director Compliance Danielle Davis, Skadden provided advice and made recommendations to the Insys Board and senior management based on its investigation.

8.      While I was not and am not privy to the details of Skadden's findings and advice, so far as I am aware, Skadden did not advise Insys to shut down the ISP, to close the IRC, to take any disciplinary or other employment action against me, or to terminate the company's relationships with Dr. Judson Somerville in Texas or Dr. Mahood Ahmad in Arkansas. I am not aware of any finding by Skaddan that I engaged in any criminal activity, and I assume that if the internal investigation had reached that conclusion, I would have been promptly fired.

9.      On or about January 13, 2017, I signed an engagement letter with attorney Steven Tyrrell of Weil, Gotshal & Manges LLP as my defense counsel in this case.

10.     Tyrrell did not specifically explain or discuss the language concerning "Conflicts of Interest" in the engagement letter with me, nor did he describe the types of foreseeable conflicts which might arise or risks such conflicts might pose to me.

11.     On or about August 8, 2018, I had a conference call with Tyrrell and his associate Eileen Citron to discuss various matters related to my case. Among other things, Tyrrell told me that Insys had reached a "settlement in principle" with the Department of Justice. Tyrrell also informed me that Insys was considering hiring Weil for assistance with "restructuring." I asked Tyrrell what this development "means for me." He responded: "nothing, really." Tyrrell briefly explained that restructuring work could entail representation of Insys in bankruptcy court proceedings. I do not specifically recall whether Tyrrell said anything to me about consulting with another attorney, although it is possible. He did tell me that my team would be "walled off" from the restructuring work. Based on Tyrrell's assurances, I did not seek other legal advice. Based on

the information that Tyrrell provided, it did not seem necessary at that time, and I felt overwhelmed by even the possibility of starting over with a different lawyer.

12.     During our call, Tyrrell did not advise me that Weil's representation of Insys would preclude him from taking any action adverse to Insys, nor did Tyrrell disclose or explain any other potential risks or problems that the concurrent representation of Insys could entail.  The entire discussion of Insys's settlement and Weil's restructuring engagement lasted no more than a few minutes as part of a lengthier call that focused on other subjects about my case.

13.     After the call, Tyrrell never told me when or if Insys formally engaged Weil. Tyrrell never confirmed for me when or if Weil had set up a screen between the attorneys working on my case and those working on Insys's matters. He also never asked me whether I was satisfied with Weil's ability to fulfill its duty of loyalty or with the firm's efforts to protect my confidential information.  We had no further discussions relating to Weil's work on Insys's restructuring or bankruptcy matters until after my trial was over.

14.     On or about June 13, 2019, I saw a news article stating that Weil was representing Insys in its bankruptcy case.  I e-mailed Tyrell to inquire whether this was a conflict of interest for me.   Tyrell responded that it was not because Insys and I "are not adverse."

15.     On or about July 15, 2019, I became aware of an article in the *Wall Street Journal* suggesting that Weil's concurrent representation of me and Insys created a conflict of interest.  The *Journal* also reported that, according to Weil, "going forward, any matters involving Mr. Simon will be handled by a different law firm."

16.     While I knew that Weil probably would not represent me on appeal because of the cost and the fact that I already had substantial unpaid bills to Weil, I was surprised and upset by

3

the suggestion that the firm had already dropped me as a client without even discussing the issue with me in advance.

17. I had not provided permission to Weil to make any public statements (whether to the media or in bankruptcy court pleadings) about my representation, client relationship, or termination thereof, nor did anyone from Weil contact me to advise me of the *WSJ* inquiry, the eventual publication of the article, or Insys's bankruptcy filings disclosing information about my representation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 9, 2019.

_____
Richard Simon