UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD M. SIMON,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  CRIMINAL NO. 1:16-cr-10343-ADB-4<br>)<br>)<br>)<br>) |

### AFFIDAVIT OF STEVEN A. TYRRELL IN RESPONSE TO DEFENDANT SIMON'S SUPPLEMENTAL MEMORANDUM

I, Steven A. Tyrrell, being duly sworn, state as follows:

1. I am a partner in the law firm Weil, Gotshal & Manges, LLP ("Weil" or the "Firm"), and resident in the Firm's Washington, D.C. office. I am also a member in good standing of the bars of the State of New York and the District of Columbia.

2. As the Court is aware, I served as lead trial counsel for defendant Richard M. Simon ("Simon") in the above-captioned matter from my engagement in January 2017, subsequent admission to this Court *pro hac vice* [ECF No. 40], through the four-month trial, and up to August 1, 2019, when Simon engaged new counsel and the Court entered an Order granting my motion to withdraw. ECF No. 945.

3. I submit this Affidavit in response to Simon's Supplemental Memorandum in Support of his Motion for New Trial (re: Counsel's Conflict of Interest) [ECF No. 974] (hereinafter cited as "Simon Supp. Memo.") and attached exhibits, including Simon's Declaration in support of the motion. On August 20, 2019, the Court entered an Order permitting Weil to submit this Affidavit. ECF No. 970.

4. The purpose of this Affidavit is to provide the Court with a full factual record regarding (a) the details of my communications with Simon when I was first engaged by him and when I later advised him about the possibility that Weil would be engaged by Insys Therapeutics, Inc. ("Insys" or the "Company") to provide restructuring advice; (b) the general nature, timing, and terms of Weil's representation of Insys; and (c) my knowledge of the status of the Department of Justice ("DOJ") investigation of Insys and, in particular, the Company's interactions with the DOJ.

5. To the extent my discussions with Simon about our defense strategy are relevant to the matters raised in Simon's motion, absent further instruction from the Court, I am unable to reveal those discussions due to the attorney-client privilege. Upon Order of the Court, however, I am prepared to provide further details about these discussions in an *in camera* setting, subject to whatever additional conditions the Court deems appropriate.[1]

6. At the time Weil was engaged to represent Insys, Weil was not representing the Company in any matter directly adverse to Simon. Moreover, at no time did the Firm's representation of Insys in restructuring matters have any effect on my representation of Simon. Indeed, throughout my representation of Simon, including after Weil was engaged by Insys in the substantially unrelated restructuring matter, I did not forego any defense theory that "possessed sufficient substance to be a viable alternative." Simon Supp. Memo. at 17 (quoting *United States v. Cardona-Vicenty*, 842 F.3d 766, 773 (1st Cir. 2016)). Furthermore, even if, as Simon suggests, direct adversity arose at some point because Weil might have sought privileged information from Insys, Weil was permitted by the conflicts waiver provisions of its engagement

---

[1] Notwithstanding the foregoing, I reserve the right to make further disclosures for the purpose of defending myself or the Firm in any proceeding concerning our representation of Simon, pursuant to Rule 1.6(b)(5) of the Massachusetts Rules of Professional Conduct.

2

letter with the Company to seek such information. Thus, during trial, I served two subpoenas for documents on Insys.

7. I also took substantial steps to ensure that Simon understood and agreed that Weil might represent a client who was adverse to him in a matter substantially unrelated to his criminal case. When I first sent Weil's standard engagement letter to Simon in January 2017, and before he signed it, I explained the conflicts waiver provisions of the letter to him, giving the example of Weil being retained to represent Insys in restructuring or bankruptcy matters (even though I had no idea that would actually come to pass almost 19 months later). In August 2018, after Insys had contacted Weil about providing restructuring advice, I had a further discussion with Simon about the implications of the engagement (a discussion that is not fully described in his motion). Finally, once Weil was engaged by Insys, Weil instituted and maintained an ethical screen between attorneys and paralegals involved on the Simon and Insys matters.

### Simon Engages Weil

8. In late December 2016, I was asked by another Weil partner to speak with Simon about his case. Over the next few weeks, I spoke on several occasions with Simon and he asked if I would agree to represent him.

9. On or about January 13, 2017, I sent a proposed engagement letter to Simon. That letter included explicit conflicts waiver provisions which contemplate concurrent or future engagements by Weil that may include potential adversaries in matters not substantially related to his own. *See* Simon Supp. Memo. at Ex. A, pp. 5-6, ECF No. 974-1. Specifically, the engagement letter states:

> Without a binding conflicts waiver, conflicts of interest might arise that could deprive you or others of the right to select Weil as their counsel. Therefore, as an integral part of our agreement, you agree that Weil may represent other clients (*including any adversary in a matter in which we represent you*) against you or

3

> any of your affiliates in other current or future litigation, transactional, advisory, or restructuring . . . matters, *as long as those matters are not substantially related* to the legal services that Weil has rendered, is rendering, or will render to you or any of your affiliates ("Allowed Adverse Representations"). . . . *You further agree that Weil's representation of other clients in Allowed Adverse Representations does not breach any duty that Weil owes to you or any of your affiliates*.

*Id*. at 5 (emphasis added).

10. At that time, I specifically called Simon's attention to the conflicts waiver provisions and explained the language to him. Indeed, I do this as a matter of routine with all of my new clients, and Simon was no exception. In discussing the provisions with Simon, I used as an example the possibility that Weil could be engaged by Insys to provide restructuring advice or to represent it in a bankruptcy. I explained that, if that happened, Weil would not represent the Company or Simon if they asserted claims against one another. To illustrate that point, I used the example of an attempt by the Company to "clawback" the $750,000 it had agreed to advance for Simon's defense in the event he was convicted. I said that, if a "clawback" claim was asserted, Weil would not represent Simon or the Company with regard to that claim. Finally, I asked Simon if he understood or had any questions about the provisions. He responded he understood and had no questions.

11. On January 27, 2017, Simon executed the engagement letter, retaining me and Weil for the limited purpose of serving as lead trial counsel in this case. *Id*. In doing so, Simon agreed, in writing, to the explicit conflicts waiver provisions in the letter.

## Weil Informs Simon of the Engagement with Insys

12. On the morning of August 8, 2018, nearly 19 months into my representation of Simon, Eileen Citron, a Weil associate assisting me in representing Simon, emailed me links to media reports that Insys had publicly disclosed it had reached an agreement in principle with the DOJ to resolve various criminal and civil claims against the Company. This is the first I learned

4

that Insys had reached such an agreement with the DOJ. After learning about the agreement, I emailed Simon to schedule an update call with him to discuss a number of topics. *See* Simon Supp. Memo. at Ex. D, ECF No. 974-4. In anticipation of the update call, I emailed Simon an agenda outlining discussion topics, which included the items "Company Settlement" and "Insys Restructuring Engagement." *Id.* Later that day, I, along with Ms. Citron, had a teleconference with Simon.

13. As Ms. Citron's notes of the call reflect,[2] I advised Simon that Weil had been contacted by Insys about providing restructuring advice. *See* Simon Supp. Memo. at Ex. E, ECF No. 974-5. I explained to him that companies that are or may be in financial distress often engage lawyers and financial advisors to assist them in managing those issues. Simon then asked how Weil's engagement with Insys would impact him. In response, I told Simon that the engagement with Insys (a) did not change my commitment to representing him to the best of my ability and (b) did not constitute a conflict of interest, because the restructuring work was unrelated to his criminal case. I reminded him about the conflicts waiver provisions of our engagement letter and explained that they are designed to cover this type of situation. I then explained that, even though Weil did not believe that the engagement would create a conflict of interest, the Firm would set up a "wall" between the team handling the Insys restructuring work and the team handling his case to ensure there would be no sharing of information between the teams. Finally, I told Simon that, if he had any concerns or questions about the Insys engagement, he should feel free to speak with another attorney.[3]

---

[2] The notes of the call, taken by Ms. Citron, are her impressions of certain aspects of the call, not a verbatim transcript.

[3] I have no knowledge whether Simon contacted another attorney for advice regarding Weil's engagement by Insys before Simon engaged his current counsel.

14.     In response, Simon stated he understood my explanation, had no questions, and voiced no objection.  The only concern he raised relative to the Insys engagement, although I do not recall if it was immediately after the discussion I describe above or slightly later in the call, concerned the impact of his ability to pay Weil's fees.  He expressed concern that it seemed that the cost of his defense was more than I had originally estimated and asked if that would have any impact on Weil's work, especially in light of our engagement by Insys.  I responded that I would not allow financial considerations to interfere with fulfilling my ethical obligation to do the best job I could for him.  At that time, and up until Simon engaged new counsel, he said nothing to suggest that he was concerned about the work I and my Firm performed for him and the strategic decisions we made in full consultation with him.  Moreover, Simon did not raise any other objections or concerns about Weil's engagement by Insys until June 13, 2019, nearly six weeks after trial ended, when Simon stated he saw an article about the engagement, erroneously suggested that he had not been informed about the engagement, and asked if it was a conflict of interest.  *See* Simon Supp. Memo. at Ex. H, ECF No. 974-8.

**<u>Insys's Engagement of Weil</u>**

15.     On August 22, 2018, two weeks after my August 8, 2018 conversation with Simon, Insys engaged Weil to represent the Company in connection with its restructuring efforts. *See* Simon Supp. Memo. at Ex. F, ECF No. 974-6.  As is reflected in the engagement letter, Weil's engagement with Insys was limited to advising Insys "in connection with the Company's evaluation of and ultimate execution of various strategic alternatives, which could include, among other things, one or more restructuring transactions, as well as representation of the Company regarding issues related thereto as directed." *Id*. at 1.  Weil did not agree to and did not represent Insys in connection with the DOJ's investigation of the Company, any cooperation

the Company may have provided to the DOJ, or any other criminal or civil matter involving Insys.

16. The Insys engagement letter expressly discloses my representation of Simon and states that I intend "to let Mr. Simon know that Weil has been engaged to represent the Company in matters unrelated to our representation of him." *Id*. The letter further states that, "[w]e will not, however, inform Mr. Simon of the nature of the engagement for the Company or of the Weil attorney responsible for it." *Id*. In truth, on August 8, 2018, during the telephone call I describe above, I did advise Simon of the general nature of the Insys representation in order to ensure that he had a clear understanding of it and, if he wished to do so, could discuss it with another attorney. Additionally, subsequent to my call with Simon, I informed my restructuring partner, Gary Holtzer, who had been involved in discussions with Insys about the potential engagement, that I had spoken with Simon about the Insys engagement.

17. Weil's engagement letter with Insys includes advance conflict waiver provisions like those in Weil's engagement letter with Simon, as well as a provision stating that Insys does "not believe that [Weil's] representation of Mr. Simon is a conflict of interest." *See* Simon Supp. Memo. at Ex. F at 5, ECF No. 974-6. Nevertheless, the Insys engagement letter also permits me to act adversely to Insys in connection with the Simon matter.[4] Thus, the advance conflicts waiver in the Insys engagement letter allowed me and my team to seek and obtain discovery from Insys leading up to and during Simon's criminal trial in the event we determined we needed to do so. In fact, during trial, I did seek certain evidence from Insys by serving two subpoenas for documents on the Company.

---

[4] In that regard, the letter states that, "[Insys agrees] to treat [Weil's] representation of Mr. Simon as an Allowed Adverse Representation." Simon Supp. Memo. at Ex. F at 5, ECF No. 974-6.

**Weil's Ethics Screen**

18.     Even though Weil believed that no conflict existed, out of an abundance of caution and to ensure that the confidentiality of the information of both clients was protected, Weil implemented and maintained an ethical screening wall to prevent attorneys and paralegals ("timekeepers") who performed work on one engagement from accessing record files from the other.  Weil erected this screen between the Simon and Insys teams on August 25, 2018.  Timekeepers on both the Simon and Insys matter teams subsequently were notified about the ethical wall and of the timekeepers working on each matter through two separate screening memoranda.  *See* Simon Supp. Memo. at Ex. G, ECF No. 974-7.  With regard to members of the Simon team, I circulated a memorandum dated September 13, 2018, informing them about Weil's engagement with Insys and instructing them to wall themselves off from that work.  *Id*.  A similar memorandum was circulated to the Insys team by another Weil partner.  *Id*.

**Insys Reached an Agreement to Resolve the DOJ's Investigation Before Weil was Engaged**

19.     As I note above, Weil did not represent Insys in connection with the DOJ's investigation, any related *qui tam* or other litigation or investigation, or any cooperation Insys may have provided to the DOJ.  My understanding is that Insys engaged Covington & Burling LLP to perform that work.  Moreover, Insys had publicly disclosed on August 8, 2018, that it had reached an agreement in principle with the DOJ to resolve potential charges and claims against the Company, two weeks before Weil was engaged to provide Insys with restructuring advice.  *See* Ex. A, Insys August 8, 2018 Announcement.

**Insys Files Chapter 11 Petition and Court Appoints Weil as Insys's Bankruptcy Counsel**

20. On June 10, 2019, Insys filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. *See* Bankr. Pet., *In re Insys Therapeutics Inc.*, No. 19-11202-KG (D. Del. June 10, 2019), ECF No. 1.

21. On June 17, 2019, Insys filed an application to retain Weil as its attorneys in the bankruptcy matter. *See*, Debtor's Appl., *In re Insys Therapeutics Inc.*, No. 19-11292-KG (D. Del. June 17, 2019), ECF No. 81. In a publicly-filed declaration supporting the application, Weil partner Gary Holtzer disclosed Weil's representation of Simon to the bankruptcy court. Debtor's Appl., at Holtzer Decl. ¶ 10, *In re Insys Therapeutics Inc.*, No. 19-11292-KG (D. Del. June 17, 2019), ECF No. 81-2. Holtzer stated that:

> Weil instituted and has maintained an ethical screening well between the Weil attorneys working on the Simon matter . . . and the Weil attorneys representing the Debtors [Insys]. The Screened Attorneys have not been involved and will not be involved in the representation of the Debtors and have not had and will not have any discussions of any aspect of Weil's representation of the Debtors with attorneys involved in the representation of the Debtors.

*Id.*

22. On July 16, 2019, the Bankruptcy Court entered an Order approving Insys's application and explicitly noted that, "Weil represents no interest adverse to the Debtors' estates with respect to the matters upon which it is to be engaged." Ord. Authorizing Retention and Emp. of Weil, Gotshal, & Manges LLP as Att'ys for Debtors Effective as of the Petition Date at 2, *In re Insys Therapeutics Inc.*, No. 19-11292-KG (D. Del. July 16, 2019), ECF No. 302.

**Withdrawal as Counsel for Simon**

23. On June 13, 2019, roughly six weeks after the jury verdict, and three days after Insys filed its Chapter 11 petition, Simon emailed me, asking for clarification regarding Weil's engagement with Insys. *See* Simon Supp. Memo. at Ex. H, ECF No. 974-8. Even though I had

9

informed Simon about Weil's work for Insys over ten months earlier, Simon claimed in his email that he "was not informed." *Id*. I reminded Simon that he and I spoke about this work and offered to provide Simon with the notes of our conversation. *Id*. I also reminded him that there was an ethical wall "between me and my team on our case and the team that is doing the restructuring work." *Id*. I further told Simon that he "and Insys currently are not adverse," and that, if Insys ever attempted clawback legal fees that the Company had advanced to Simon, "that Weil would not perform that work for the Company (and that would be outside the scope of our engagement too). They [Insys] and you [Simon] would have to engage other counsel to deal with that issue." *Id*. Consistent with his remarks during our call months earlier on August 8, 2018, Simon responded, "[g]ot it. I understand." *See* Ex. B, June 18 Simon Email Chain. Moreover, Simon went a step further, asking whether Weil would continue to represent him at sentencing saying, "I hope you do."[5] *Id*.

24. On Friday, July 19, 2019, after the Wall Street Journal had published an article about Weil's representation of Simon and Insys, Simon emailed me that "[t]he Wall Street Journal is reporting that Weil is 'representing the company that helped to get Mr. Simon convicted . . . .'" *See* Simon Supp. Memo. at Ex. I, ECF No. 974-9 (referencing *Insys Bankruptcy Raises Conflicts Issues for Weil Gotshal*, WALL STREET J. (Jul. 25, 2019), https://www.wsj.com/articles/insys-bankruptcy-raises-conflicts-issues-for-weil-gotshal-11563222129). In response, I stated, "[n]ot sure how the company helped get you convicted." *Id*. Indeed, as I note above, I had and have no specific knowledge of what cooperation Insys

---

[5] As provided by our engagement letter with Simon, I intended to represent him at sentencing and, if necessary, through the filing of a Notice of Appeal.

10

provided to the DOJ during its investigation of the Company and others (nor do I suspect that the Wall Street Journal does).

25. In our July 19, 2019 email exchange, I informed Simon that "my firm's representation of the company in the bankruptcy proceedings happened long after the company had conducted its internal investigation and is unrelated to the criminal case. There also has been and will be a wall between my team and the bankruptcy team such that no confidential information is shared." Simon Supp. Memo. at Ex. I, ECF No. 974-9. I concluded by reminding Simon that he had engaged Weil to handle his case before the district court and we were "not engaged to represent [him] on appeal and will not be doing so." *Id*.

26. On Monday, July 22, 2019, Simon notified me that he had decided to engage new counsel and asked that I preserve his entire client file. *See* Ex. C, July 22 Simon Email Chain.

## Weil's Representation of Simon was Not Materially Limited

27. As I describe throughout this Affidavit, at no time was I or the Weil team representing Simon limited in any way by the Firm's representation of Insys, which was not substantially related to the Simon matter. Moreover, Weil instituted an ethical screen that prevented the sharing of any privileged information between the two teams. Accordingly, neither I, nor my Firm, ever received the type of client confidences from Insys that prevented me or my team from providing Simon with anything other than a zealous and wholehearted defense at trial.

11

28.     This is plainly evidenced by the Weil team's robust cross-examination of key Government witnesses at trial, who provided direct testimony concerning Simon.[6]  Weil's engagement with Insys did not in any way impede or impair my team's ability at trial to challenge, impeach, and rebut key Government witnesses.  In that regard, Simon's sole reference to a witness concerns Jessica Bradley (formerly known as Jessica Crane), who worked for Insys as an Area Business Liaison (with Natalie Babich, née Levine) and then as a Specialty Sales Representative, all in the Boston area.

29.     During Bradley's testimony, she only mentioned Simon once, on cross-examination by a co-defendant, stating that she had a single, brief call with him.  In spite of this, Simon asserts (a) that Insys may have possessed privileged information that Bradley lied to Company counsel during its internal investigation, (b) that Weil could have successfully asked the Court to force Insys to disclose that information, (c) that the information could have been used to impeach Bradley more than she already had been impeached, and (d) that this was a viable alternative defense to the DOJ's case.  As the Court may recall, however, Bradley did not testify that Simon was aware of her illegal activities.  In other words, she did not connect him to the alleged conspiracy.

30.     Simon also claims that Weil could not seek to obtain or use privileged, exculpatory materials from Insys in support of a good faith defense.  *See* Simon Supp. Memo. at 1.  This assertion is incorrect for several reasons.  First, Weil could—and did—seek discovery from Insys, because the Firm's engagement letter with Insys, like its letter with Simon, allowed

---

[6] For instance, I, along with Patrick O'Toole, handled cross-examinations at trial of the following Government witnesses who testified against Simon:  Michael Babich, Alec Burlakoff, Oliver Gauthier, Elizabeth Gurrieri, Richard Horrocks, Matthew Napoletano, and Ty Rustin.  None of these individuals provided testimony on behalf of Insys.

12

Weil to be adverse to Insys in matters unrelated to the restructuring engagement, including the Firm's representation of Simon. And, in fact, Weil issued two trial subpoenas to Insys for documents relevant to Simon's defense. Second, Simon assumes that Insys possessed privileged, exculpatory information demonstrating that he acted in good faith. During trial, however, the Government repeatedly represented that it had received inculpatory information from Insys, including information about the Insys Reimbursement Center ("IRC") and Insys Speaker Program ("ISP"). Third, I did advance a good-faith defense on Simon's behalf, introducing numerous Insys emails showing that he tried to ensure that the Company's activities were carried out in a compliant manner. Those exhibits also formed the basis of an argument I made during closing that Simon had acted in good faith. *See, e.g.*, Trial Tr. Day 50, 4/5/19 at 53:15-17. In sum, Weil's restructuring work for Insys did not impede or impair my representation of him in any way.[7]

I declare under penalty of perjury that the foregoing is true and correct and that this Affidavit was executed on September 16, 2019, in Washington, D.C.

DISTRICT OF COLUMBIA: SS
SUBSCRIBED AND SWORN TO BEFORE ME
THIS 16th DAY OF Sept., 2019.

NOTARY PUBLIC
My Commission Expires Feb. 29, 2020

Steven A. Tyrrell
Weil Gotshal & Manges LLP
2001 M Street, N.W., Suite 600
Washington, D.C., 20036
(202) 682-7213

---

[7] As I note above, absent further guidance from the Court, I remain concerned that the attorney-client privilege prevents me from disclosing the substance of discussions I had with Simon regarding matters of strategy that are raised in his motion. Upon Order of the Court, however, I am prepared to provide further details about these discussions in an *in camera* setting, subject to whatever additional conditions the Court deems appropriate.

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September 16, 2019.

 /s/ Patrick J. O'Toole. Jr.
Patrick J. O'Toole, Jr., (BBO# 559267)
patrick.otoole@weil.com
WEIL GOTSHAL & MANGES LLP
100 Federal Street, 34th Floor
Boston, Massachusetts 02110-1802
(617) 772-8365