UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | CRIMINAL NO. 16-10343-ADB |
| ) | |
| MICHAEL GURRY, ET. Al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT RICHARD M. SIMON'S MOTION FOR NEW TRIAL
(RE: COUNSEL'S CONFLICT OF INTEREST) (DOC. 974)**

The United States respectfully submits this response in opposition to the *Supplemental Memorandum in Support of Defendant Richard M. Simon's Motion for New Trial (Re: Counsel's Conflict of Interest) (Doc. 974)*. Because the United States previously responded in opposition to each of counsel's other arguments for a new trial, this response addresses only Simon's arguments related to trial counsel's alleged conflict of interest.

As discussed below, and supported by the *Affidavit of Steven A. Tyrell in Response to Defendant Simon's Supplemental Memorandum* (Doc. 975), the Defendant's motion is both procedurally improper and substantively meritless and should be denied without a hearing. Any prejudice to Simon is "improbable because there was no actual conflict of interest." *See United States v. Cardona-Vicenty*, 842 F.3d 766, 772 (1st Cir. 2016). To the extent the Court allows Defendant's motion to proceed to a hearing, the Government requests discovery as set forth below in order to further challenge Simon's claim of trial counsel's alleged conflict. No matter how the Court elects to proceed, Simon's motion should not delay his sentencing.

## I. The Court Should Deny the Defendant's Requested Relief

### A. Defendant's Motion Is Procedurally Improper.

#### 1. Simon's Motion is Untimely

Simon's motion for a new trial is untimely, which alone provides a sufficient basis to deny it. Indeed, in neither his *Motion for Leave to Supplement his Pending Motions for New Trial* (Doc. 950) nor his Supplement (Doc. 974), does Simon even attempt to explain why his motion should be considered timely, and instead simply calls the issues "emergent." *See* Doc. 950 at 1.

To present a timely argument under Rule 33, Simon must either establish that he is presenting newly discovered evidence, or, if for other reasons, that he filed his motion within 14 days of the verdict. *See* Fed. R. Crim. P. 33(b)(1) and (2) respectively. Simon has done neither. Likely recognizing the procedural deficiencies rendering his motion untimely, Simon labels it a "supplement" to his initial motion for a new trial, which was timely filed on June 6, 2019. But the instant motion, which presents new arguments entirely unrelated to the June 6th motion for a new trial, cannot be properly considered a supplement and Simon should not be permitted to do an end-run around the requirements of Rule 33 by labeling it as such.

##### a) Simon Has Not Presented Newly-Discovered Evidence

Rule 33(b)(1) provides for a motion for new trial based upon newly discovered evidence. Claims of ineffective assistance of counsel—including those related to conflicts of interest—are not newly discovered evidence for purposes of Rule 33. *See United States v. Lema*, 909 F.2d 561, 565 (1st Cir. 1990) (joining every other circuit that had considered the issue, except DC, in finding ineffective assistance of counsel is not newly discovered evidence).

Even if ineffective assistance claims could be considered newly discovered evidence, the allegations raised by Simon would not suffice, as Simon himself concedes that he knew about the potential conflict, and his right to consult with a new attorney, in August 2018—at least *four months* before trial. Rather than endeavoring to discuss this issue with a new attorney, as was his right, Simon instead waited to raise a concern until after trial had concluded and he was found guilty. Simon should not be permitted to lie in wait with information until he is found guilty and to then raise that same information under the guise of newly discovered evidence.

Simon's attempt to point to a July 15, 2019 Wall Street Journal article as the purported catalyst prompting the instant motion is inapposite. As an initial matter, the Wall Street Journal article addresses the same alleged conflict that Simon had known about since August 2018—nearly a *year* prior to the publication of the article. The information in the article plainly does not constitute newly-discovered evidence within the scope of Rule 33(b)(1).[1]

### b) *Simon Did Not File the Motion within 14 Days of the Verdict*

Just as Simon cannot rely upon Rule 33(b)(1) for relief, neither can he look to Rule 33(b)(2). Rule 33(b)(2) provides for a motion for new trial for any other reason (i.e., other than newly discovered evidence), so long as the motion is presented within 14 days of the verdict. Here, the jury rendered its verdict on May 2, 2019, and motions were due by May 16, 2019.

---

[1] Even if the article did include new evidence—which it did not—Simon did not immediately bring the issue to the attention of the Court, but rather, waited a full three weeks to move to "supplement" his motion for a new trial.

Without objection, the Court permitted the defendants to file Rule 29 and 33 motions no later than June 6, 2019. It is undisputed that Simon's motion comes well after the June 6 deadline.

The Supreme Court has established that, where a party properly raises an objection to the timeliness of a filing—as the United States has done here—the deadlines established by Rule 33 are not flexible. *See Eberhart v. United States*, 546 U.S. 12, 19, 126 S. Ct. 403, 407, 163 L. Ed. 2d 14 (2005) (although a party may forfeit relief by failing to object, Rule 33 provides an inflexible deadline). Consistent with this precedent, the First Circuit has repeatedly held that a district court lacks discretion to grant a motion for a new trial which is not submitted within the allotted time. *See United States v. Diaz*, 300 F.3d 66, 78 (1st Cir. 2002) (finding that "the district court had no authority to order a new trial pursuant to Rule 33" where the filing was made beyond the applicable deadline); *United States v. Lema*, 909 F.2d 561, 565 (1st Cir. 1990); *United States v. Fontanez*, 628 F.2d 687, 697 (1st Cir.1980) ("The district court was clearly correct in finding that the [then seven-day] filing rule, Fed.R.Crim.P. 33, is jurisdictional and that it had no authority to entertain the motion for a new trial, which was one day late.").[2]

Rather, because Rule 33 is a claim-processing rule, the district court is bound to follow Fed. R. Crim. P. 45(b) and may permit extensions of time for Rule 33 motions only if (1) the extension is requested during the original time period; or (2) if the party failed to act because of excusable neglect. Here, neither provision of Rule 45 permits this Court to consider Simon's untimely motion. No request was granted during the original 14 days, and Simon cannot argue

---

[2] *See also United States v. Gorbea Del-Valle*, 566 F.3d 31, 38 (1st Cir. 2009); *United States v. Hernandez-Rodriguez*, 443 F.3d 138, 150 (1st Cir. 2006); *United States v. DiSanto*, 86 F.3d 1238, 1250 n.12 (1st Cir. 1996).

excusable neglect because, as discussed above, he had all the facts necessary to raise this claim months prior to trial, let alone within the time prescribed by Rule 33.

### c) Simon's Efforts to Evade Rule 33 By Improperly Labeling His Motion a "Supplement" Should Be Rejected

In an attempt to escape Rule 33(b)(2)'s 14-day time limitation, which cannot be extended pursuant to Rule 45(b), Simon's motion instead purports to "supplement" his previously filed Rule 33 motion. Simon's efforts should be rejected as the information provided in the motion is a new argument, not a "supplement."

Although the Court granted Simon's motion to supplement, it did so over government objection and without the benefit of reviewing the actual purported supplement. Now that the Court has had the benefit of reviewing the purported supplement, it should deny to designate it a supplement—because it is not. For example, whereas Simon's recent motion focuses on Weil's purported conflict, the initial motion focused on sufficiency of the evidence and alleged improprieties during the government's rebuttal argument. *See* Doc. 863 (Simon's motion for new trial and/or acquittal). The purported supplement raises entirely new issues and arguments and, other than the fact that it is also a Rule 33 motion, has nothing to do with the timely motion.[3]

### 2. Simon Must Agree to Cross-Examination Before the Court Proceeds

As a threshold matter, Simon's affidavit is the only evidence Simon provides in support of his claim of an actual conflict. However, Simon has not indicated that he is willing to submit to cross examination regarding the facts he has attempted to put in dispute. The Defendant's

---

[3] The purported supplement also fails to relate-back to the joint motion for new trial and/or acquittal. *See* Doc. 860 (all trial defendants' joint motion).

motion should not be further considered unless and until he does. *See United States v. Phillipos*, 849 F.3d 464, 469 (1st Cir. 2017) (District Court has significant discretion regarding the "need for, and utility of, evidentiary hearings…"); *see also United States v. Baskin*, 424 F.3d 1 (1st Cir. 2005) (not abuse of discretion to strike defendant's affidavit in support of motion when defendant refused to be cross-examined.)

In *Phillipos*, the Defendant moved to suppress his statement to law enforcement and submitted an affidavit in support of his motion. *See Phillipos*, 849 F.3d at 469. Because the Defendant's affidavit was Phillipos' only proffered evidence to support his claim for suppression, the District Court deemed the affidavit illusory and declined to hold a hearing. In declining to find an abuse of discretion, the First Circuit observed:

> Phillipos sought to establish the requisite factual predicate for his motion solely on the basis of his own affidavit, which he would not allow the government to test through cross-examination. Nor did Phillipos identify any additional evidence that he would be able to present at the hearing, other than his speculative assertions that he might have established support for his affidavit's account through his own cross-examination of the government agents who conducted the interviews that led to the confession.

*Phillipos*, 849 F.3d at 469 (1st Cir.).

Similarly, in *Baskin*, the Defendant invoked his Fifth Amendment rights when the government attempted to confront him regarding the contents of an affidavit. *Baskin*, 424 F.3d at 3. The District Court struck Baskin's affidavit and denied his motion. The First Circuit upheld this action because a trial judge may strike a witness's direct testimony if he refused to be cross-examined. *Id.* Refusing to be cross-examined is problematic because it undermines the prosecution's ability to test the veracity of the information. *Id.*

Here, much like *Phillipos* and *Baskin*, Simon asks the Court to trust his affidavit to find that the verdict must be discarded because "the conflict precluded Weil from taking any action adverse to Insys in defending Mr. Simon." *See* Doc. 974 at 1. The only evidence Simon proffers

6

in support of this argument is his own affidavit. Simon's claim is also contrary to information provided to the Court during trial demonstrating Skadden reported negative findings to Insys' Board. Before this Court endeavors to consider Simon's claim, Simon must commit to cross-examination and, as discussed below, to providing discovery to the government. Absent such a commitment, much like those in *Phillipos* and *Baskin*, Simon's affidavit is illusory and of no value.

Should the Court credit Simon's untested affidavit, no actual conflict of interest existed and, therefore, the interests of justice do not require a new trial. *See* Fed. R. Crim. P. 33(a). The Defendant must show an actual conflict of interest "actually affected" his lawyer's "performance." *See United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994). The first mandatory showing is that of an actual conflict. *Id.* If an actual conflict has been demonstrated, then that actual conflict must have rendered an alternative defense strategy improbable. *See Cardona-Vicenty*, 842 F.3d at 772-73. Prejudice can only be presumed where alternative strategies are improbable. *Id.* The alternative strategy must possess substance. *Id.* at 773. The First Circuit has warned:

> As "[w]e [have] long ago cautioned," where the conflict relies on some attenuated hypothesis having little consequence to the adequacy of representation, we will not grant an "undeserved 'windfall' to defendants by [automatically] vacating convictions. ***That is so because the Sixth Amendment right to effective assistance of counsel has been accorded not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.*** Where there is no conflict of interest and thus no effect on counsel's representation or a defendant's fair trial interests, there is no Sixth Amendment violation.

*Cardona-Vicenty*, 842 F.3d at 774 (internal quotations and citations omitted) (emphasis added); *see also United States v. Newton*, 326 F.3d 253, 264 (1st Cir. 2003) ("…adverse performance is the touchstone of Sixth Amendment error under the Supreme Court's actual conflict-of-interest

jurisprudence…"). Here, Simon's right to a fair trial has not been infringed, there was no adverse performance, and the motion must be denied.

### B. Defendant's Motion Fails on the Merits.

#### 1. Simon's Counsel Was Not Actually Conflicted.

To show an actual conflict, Simon must demonstrate that (1) the lawyer could have pursued a plausible alternative defense strategy or tactic, ***and*** (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties. *See Soldevila-Lopez*, 17 F.3d at 486. Weil's representation of Insys in the restructuring matter was never adverse or inherently in conflict to the Defendant's interests in this case. *See* Doc. 975 at 2, ¶ 6. A conflict only exists where two clients will be directly adverse to each other, or there is a significant risk that the lawyer's representation will be materially limited by the dual representation. Mass. R. Prof. C. 1.7(a). Simon contends that this Court should analogize Weil's concurrent representation of Simon and Insys to that of a law firm representing co-defendants. *See* Doc. 974 at 20 (citing representation of Insys as a cooperating witness). There is, however, a critical distinction: here, ***Weil did not represent Insys in connection to the criminal investigation***. Per the Tyrell Affidavit, "Weil did not agree to and did not represent Insys in connection with the DOJ's investigation of [Insys], any cooperation [Insys] may have provided to the DOJ, or any other criminal or civil matter involving Insys. Doc. 975 at 6-7, ¶ 15. Rather, Insys was represented in the investigation by a separate firm, Covington and Burling. Weil's representation of Insys was purely on the restructuring matter—which was unconnected to this trial. Simon fails to connect the restructuring work with the criminal defense, other than to argue that they must be related because they both involve Insys. In support of this argument, Simon contends that Weil's representation of Simon in the criminal case and Insys in the bankruptcy

8

proceeding is analogous to "the most typical example…when a lawyer represents a client in litigation **against a party** whom the lawyer's firm represents in another matter." Doc. 974 at 21 (emphasis added). In support of his argument, Simon cites a New York City Bar Association ethical opinion. *See* NYCBA Formal Op. 2001-3. But the opinion cited by Simon is inapplicable because it addresses the concern when one firm represents two clients suing one another – in any capacity – and addresses the ability of the firm to limit its representation of each client. *Id*. Simon also points to another NYCBA opinion and a citation to *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384 (2d Cir. 1976). So too, *Cinema 5 Ltd*. fails to support Simon's argument that the restructuring work in this case and criminal defense were adverse to one another. In *Cinema 5 Ltd.*, the same law firm defending Camera in one law suit was also simultaneously representing a different client suing Camera. *Cinema 5. Ltd.*, 528 F.2d at 1387. There, the Second Circuit stated:

> [i]t can hardly be disputed that there is at least the appearance of impropriety where half his time is spent with partners who are defending Cinerama in multi-million dollar litigation, while the other half is spent with partners who are suing Cinerama in a lawsuit of equal substance.

*Id*. Plainly, unlike the situation here, representing one client suing another client creates a direct adverse relationship. In addition, the Second Circuit has expressed doubt that a conflict exists, even in the fact of direct adversity, simply because two lawyers work for the same law firm. *See Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 133 (2d Cir. 2005). As a result, the Massachusetts ethical rules cited by the Defendant are inapplicable because they are premised on "directly adverse" representation. *See e.g*. Mass. R. Prof. C. 1.7, cmt. 6.

Simon's only argument in support of this purportedly adverse relationship is that his trial counsel *might* have sought privileged materials from Insys and *might* have foregone such action—including any subpoenas to Insys—due to a purported conflict. Simon's trial counsel decisively and unambiguously dispels any such concern:

> **[T]he Insys engagement letter also permits me to act adversely to Insys in connection with the Simon matter** . . . Thus, the advance conflicts waiver in the Insys engagement letter allowed me and my team to seek and obtain discovery from Insys leading up to and during Simon's criminal trial in the event we determined we needed to do so.

*See* Doc. 975 at 2-3, ¶6, 7, ¶17, and at 12-13, ¶30 (emphasis added). Not only was Simon's trial counsel permitted to seek discovery from Insys, counsel knew he was permitted to do so, **and counsel in fact did seek such discovery**: specifically, during trial, Tyrell served Insys with two document subpoenas. *Id.* at ¶17. This fact alone undermines Simon's argument regarding a purported "alternative strategy." Even if a potential conflict existed, Tyrell knew he was not limited in his representation of Simon and, therefore, no actual conflict existed.

Weil also completely screened the criminal team from the restructuring team. *See* Doc. 975 at 11, ¶27 ("Weil instituted an ethical screen…"). Simon does not argue, nor can he, that the restructuring team utilized confidential information Simon shared with the Weil criminal team. *Id.* (ethical screen prevented sharing of any privileged information between the restructuring and criminal teams). At least one circuit has directly addressed the use of screens to protect client confidences and held that a screen may be an effective way to safeguard those confidences. *See Hempstead Video, Inc.*, 409 F.3d at 137 (district courts assuming the Second Circuit was opposed to the use of screens "…would be mistaken…."). *Id.* The court could "see no reason why…isolation…cannot adequately protect against taint." *Id.* at 138. *Altova GmBH v. Syncro Soft SRL*, a district court opinion cited by the Defendant in support of his argument against a screen, does not address the issues of a screen in the loyalty context. 320 F.Supp.3d 320, at 319

(D. Mass. 2018). In the sole one-paragraph circuit opinion cited by the Defendant directly mentioning the use of a screen, *United States v. Watts*, a decision the Ninth Circuit elected not to publish, the Ninth Circuit did not even resolve the question. 35 Fed. Appx. 576 (9th Cir. 2002) (unpublished). In this instance, Weil's representation was not in the same case or matter and Weil was not actively representing co-defendants. Simon cites no binding precedent outlawing the use of such a tool in the criminal context and no precedent banning the use of a screen when one client is involved in a criminal matter and the other client is involved in an unrelated bankruptcy.

> 2. **Even if Simon's Counsel Was Conflicted, Prejudice Cannot Be Presumed**

Even if this Court proceeds to the question of prejudice, which it need not do, no prejudice can be found. Weil provided diligent and competent representation of Simon and raised a good faith defense, notwithstanding his claims to the contrary. *See* Doc 975 at 12-13, ¶ 30 (Weil's representation was not materially limited and counsel did put forth "a good-faith defense on Simon's behalf…"). Indeed, Tyrell did not even know about Insys' agreement with the Department of Justice until his associate presented the information to him in August 2018— 19 months into Tyrell's representation of Simon. *See* Doc. 975 at 4-5, ¶12 ("This is the first I learned that Insys had reached such an agreement with the DOJ."). Any suggestion that Insys' cooperation with the DOJ affected Simon's defense is belied by the timeline: Insys, represented by Covington and Burling, reached a settlement in principle with the DOJ on August 8, 2019, and did not engage Weil with respect to the bankruptcy until *two weeks later*. Doc. 975 at 9, ¶19 ("Insys had publicly disclosed on August 8, 2018 that it had reached an agreement in principle with the DOJ to resolved potential charges against the Company, two weeks before Weil was engaged to provide Insys with restructuring advice.").

Because the Defendant *did* raise a good-faith defense, and because no actual conflict existed, the Defendant has not pointed to the existence of a possible alternative strategy. The Defendant argues that "Simon was unable to present this exculpatory evidence of his good faith" but the testimony at trial and arguments by his own counsel belie this claim. *See e.g.* Doc. 975, Tyrell Affidavit, at 13, ¶30. Simon did present evidence of his good faith—the jury rejected it. *Id.*

Significantly, Insys' purported claim of privilege over certain documents does not conceal a possible viable alternative strategy. There is no evidence that piercing the privilege would have helped Simon. Weil represented Simon for nearly 19 months before the alleged conflict arose, from January 2017 through August 2018. *See* Doc. 39 (Unopposed Motion for Admission *Pro Hac Vice* for Weil counsel dated January 27, 2017). As early as June 8, 2017, the parties anticipated each defendant would proceed to trial. *See e.g.* Doc. 112 at 2 (June 8, 2017 report that parties anticipate trial); Doc. 300 at 4 (April 25, 2018 report that parties anticipate trial). Weil began to represent Insys in the unrelated restructuring in or around August 2018. *See* Doc. 974 at 4. And yet, at no time during the period before August 2018 did Simon's trial counsel pursue a strategy of attacking Insys' privilege claims.

The Defendant argues that evidence that Insys' internal investigation counsel, Skadden, determined that the IRC and ISP were not aspects of a racketeering enterprise would have been relevant and exculpatory. The Defendant is speculating and does not know any such evidence exists and, furthermore, as the Defendant knows, the government repeatedly provided information to the Court that contradicts this claim. *See e.g.* March 25, 2019 Trial Tr. at 17-25; *see also* Court Exhibit 116 (package of documents gathered for the Board of Directors demonstrating problems with the IRC and ISP).

The Defendant submits that trial counsel's subjective opinion about a potential defense strategy is irrelevant if an actual conflict exists. However, in this instance, this is circular logic, which presupposes the existence of a potential defense strategy. It was not that a probable strategy existed that Weil could not exploit due to conflict, rather, Weil took the good faith argument as far as it seemingly could go—but there simply was no probable alternative strategy with "sufficient substance to be a viable alternative." *See Cardona-Vicenty*, 842 F.3d at 773.

### 3.     Even if a Conflict Existed, It Was Waivable and Simon Waived It

Even assuming *arguendo* that a conflict existed, it was waivable and was, in fact, waived by Simon. The ethical rules prohibiting waiver contemplate conflicts that are directly adverse. As explained above, Weil's restructuring representation and Weil's criminal representation of Simon were not adverse. Because they were not adverse, Simon could waive the potential conflict, and the evidence demonstrates that he did so.

Contrary to Simon's arguments, Tyrell submits that he did have meaningful discussions with Simon about the potential conflict—and that Simon understood the dangers and agreed to the waiver—at two separate points in time: first, at the beginning of Simon's engagement of Tyrell in January 2017, and again in August 2018. *See* Doc. 975, Tyrell Affidavit at 3, ¶7. According to the Tyrell Affidavit, when initiating his representation of Simon in January 2017, Tyrell "specifically called Simon's attention to the conflicts waiver provision and explained the language to him." *Id*. at 4, ¶10. Indeed, Tyrell used as an example the ***very situation*** that ultimately arose: "In discussing the [advance waiver] provisions with Simon, I used as an example the possibility that Weil could be engaged by Insys to provide restructuring advice or to represent it in bankruptcy." *Id.* Simon ultimately "responded that he understood and had no questions" regarding the advance waiver provisions. *Id.*

Tyrell discussed the conflicts waiver issue once again in August 2018, when Insys was seeking to engage Weil to represent the Company in its bankruptcy. At that time, contrary to Simon's claim that Tyrell only provided *de minimus* explanation, Tyrell states that he fully informed Simon of the potential restructuring conflict, advised Simon he could confer with another attorney, and Simon waived any objection. *Id*. at 5, ¶13 ("I told Simon…he should feel free to speak with another attorney."). The record evidence can support only one conclusion: that Simon knowingly waived not once, but twice, the very conflict he now claims he knew nothing about. Simon's complaint regarding Weil's alleged conflict should be seen for what it really is: feigned surprise regarding a conflict he had knowingly waived in an effort to obtain a second bite at the apple following his well-supported conviction.

\* \* \* \* \*

Because Simon's motion is untimely, and unsupported by facts absent an agreement to be cross-examined, the Court should deny the Defendant's motion without hearing and without an evidentiary hearing. Should the Defendant provide notice of intent to sit for cross-examination, the government respectfully requests leave to supplement this section of its opposition.[4]

## II.     **The Government's Motion for Discovery – If Necessary**

If this Court is inclined to proceed with oral argument, an evidentiary hearing, or discovery from the government, the government requests the Court direct the Defendant to disclose any and all communications (in any form) with or by Weil regarding Simon's communications with Skadden (and its contactors, subcontractors and so on) or Insys in any

---

[4] It should be noted that there is no right to discovery by a defendant in a proceeding such as this. No good cause exists to compel the government to provide any discovery to the Defendant. The government reserves the right to further oppose any such demand or request by the Defendant.

capacity that relate to the availability of an advice of counsel defense.[5]  On September 12, 2019, the government formally requested this information from the Defendant and the Defendant declined to provide any information.  The government also requests the Court direct Weil to disclose the substance of any communications withheld from the Tyrell Affidavit due to confidentially concerns.

If the Court proceeds to examine the substance of the Defendant's claim of a conflict of interest, this information is of critical importance to the process because it will permit the government access to the same information Simon relies upon in support of this motion.  For example, to rebut proof that his claim is improbable, Simon has tendered an affidavit in which he claims to have told Skadden the complete and total truth about his activities at Insys.  What does truth mean to Simon in this context?  Did Simon admit the criminal activity, some version of it, or something else?  These facts must be explored should the Court consider the merits.

In order for his claim of prejudice not to be improbable, Simon must have reported to Weil at some point what he told Skadden.  Simon cannot now seek to hold against Weil a purported failure to explore a defense that Simon never told Weil existed.  Either he told them or he did not.  The government should be entitled to discovery that bears on the viability of the potential defense and whether and when it was considered.

Discovery by the government in this context is appropriate and not out of the ordinary.  Courts routinely hold that, when a client raises a claim of ineffective assistance of counsel, the client waives the attorney-client privilege.  *See Oliver v. United States*, No. CR. 07-10016-

---

[5] The government does not anticipate that the government's discovery request, if granted, will delay the proceedings.  Surely Simon's counsel has reviewed the relevant materials before leveling such serious allegations and can disclose those documents and that information forthwith.

MLW, 2010 WL 2612738, at *1 (D. Mass. June 25, 2010).  As the Second Circuit has noted, "except in highly unusual circumstances, the assertedly ineffective attorney should be afforded an opportunity to be heard and to present evidence in the form of live testimony, affidavits or briefs." *Bloomer v. United States*, 162 F.3d 187, 194 (2d Cir. 1998) (internal quotation marks omitted) (quoting *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998)).  Similarly, the Eighth Circuit has ruled:

> A client has the privilege to keep his conversations with his attorney confidential, but ***that privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence*** . . . Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege.

*Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974) (emphasis added).  Decisions in other Courts of Appeals reflect the same principle.  *See, e.g., In re Lott,* 424 F.3d 446, 452-53 (6th Cir. 2005) ("The [attorney-client] privilege may be implicitly waived by claiming ineffective assistance of counsel or by otherwise raising issues regarding counsel's performance"); *Bittaker v. Woodford*, 331 F.3d 715, 718 (9th Cir. 2003) ("The rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue . . . dates back to at least Hunt v. Blackburn, 128 U.S. 464 . . . (1888)"); *Johnson v. Alabama*, 256 F.3d 1156, 1178 (11th Cir. 2001) ("By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, [defendant] put at issue – and thereby waived – any privilege that might apply to the contents of his conversations with those attorneys").

This rule has been followed by the Courts in this District.  *See, e.g., Oliver*, 2010 WL 2612738, at *1 ("When a petitioner raises claims of ineffective assistance of counsel, such claims waive the right to attorney-client privilege" and "that implied waiver extends to communications

with trial counsel that are relevant to the alleged ineffectiveness") (citing *Johnson v. Alabama*, 256 F.3d 1156, 1178-79 (11th Cir. 2011); *United States v. Goodwin*, 797 F. Supp. 2d 177. 182 (D. Mass. 2011) (Gorton, J.) (by claiming ineffective assistance of counsel in Section 2255 petition, petitioner impliedly waived attorney-client privilege with respect to communications necessary to prove or disprove his claim); *Sena v. Spencer*, 2006 WL 568306, at *6, n. 7 (March 8, 2006, D. Mass.) (Woodlock, J.) (noting that Massachusetts Rule of Professional Conduct 1.6 "specifically allows the disclosure of confidential information relating to the representation of a client 'to respond to allegations in any proceeding concerning the lawyer's representation of the client'"); *Tibbs v. United States*, Civil No. 02-11265-NG (Feb. 26, 2003, D. Mass.) (Gertner, J.) (ordering Section 2255 petitioner to file waiver of attorney-client privilege and affidavit outlining factual bases of claimed ineffectiveness); *Devaney v. United States*, Civil No. 97-10957-WGY (Aug. 26, 1997, D. Mass.) (Young, J.) (ruling that allegations of ineffective assistance, in Section 2255 petition and in motion for new trial, waived privilege).  Under this analysis, by challenging his counsel's effectiveness via his allegation of a conflict of interest, Simon has waived the privilege that was once attached to his communications with his defense counsel.

Even if Simon did relate to Weil facts that would support a defense based on good faith reliance on the advice of Skadden, Weil's failure to attempt to pierce the privilege is not indicative of prejudice.  There is no evidence in the record showing that Insys had in its possession evidence suggesting that Simon acted in good faith; rather, Simon only "assumes" Insys possessed such information.  *See* Doc. 975 at 13, ¶ 30 ("Simon assumes that Insys possessed privileged exculpatory information demonstrating that he acted in good faith."). Indeed, Tyrell appears to be unaware of information from his client to bolster Simon's latest

argument that piercing the privilege was a potential strategy.  As Tyrell explains, and as Court Exhibit 116 demonstrates, the company *was* told problems existed with the ISP and IRC and provided proof of certain bad actors and some of their actions.  *See Id*. and hearing outside presence of jury regarding testimony of Danielle Davis and privilege issues, March 25, 2019 Trial Tr. at 1-46.  Particularly in light of the conspiracy charge, piercing the privilege on Simon's behalf would have been of no probative value for his defense.

### III.     Sentencing Need Not Be Delayed

The defendant is scheduled to be sentenced on November 5, 2019 and his co-conspirators are scheduled to be sentenced shortly thereafter.  Sentencing need not be delayed by this meritless motion.  Sentencing the Defendant contemporaneously to the other Defendants serves the interests of justice and further enables this Court to sentence each defendant within the sentencing framework and pursuant to 18 U.S.C. § 3553.

The Court should deny the Defendant's motion as untimely and/or as substantively insufficient, or deny the motion because the Defendant has other available remedies he may pursue on direct or collateral challenges.

### IV.     Conclusion

Wherefore, the defendant's motion should be denied without oral argument or an evidentiary hearing.  In the alternative, should the Court elect to hold a hearing or oral argument, the government respectfully requests the Court order the Defendant to provide any and all communications (in any form) with or by Weil regarding Simon's communications with Skadden (and its contactors, subcontractors and so on) or Insys in any capacity that relate to the

availability of an advice of counsel defense forthwith and Order Weil to disclose any confidential communications withheld from the Tyrell Affidavit.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

Dated: September 24, 2019     By:     /s/ *David G. Lazarus*
DAVID G. LAZARUS  (BBO #624907 )
K. NATHANIEL YEAGER
FRED M. WYSHAK, JR.
MARK T. QUINLIVAN
Assistant U.S. Attorneys
One Courthouse Way, Ste. 9200
Boston, MA  02210
(617) 748-3100
david.lazarus2@usdoj.gov

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *David G. Lazarus*
David G. Lazarus
Dated: September 24, 2019     Assistant U.S. Attorney