IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

RICHARD M. SIMON

No. 16-cr-10343-ADB

LEAVE TO FILE GRANTED
ON OCTOBER 15, 2019
ECF #982

**REPLY TO THE UNITED STATES' RESPONSE
IN OPPOSITION TO DEFENDANT RICHARD M. SIMON'S
MOTION FOR NEW TRIAL (RE: COUNSEL'S CONFLICT OF INTEREST)**

William W. Fick, Esq. (BBO #650562)
Daniel N. Marx, Esq. (BBO #674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM
DMARX@FICKMARX.COM

*Counsel for Defendant Richard M. Simon*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

I.    This Court should reject the government's request to reconsider the Order authorizing Mr. Simon's supplemental memorandum concerning trial counsel's conflict of interest, which is proper and timely. .......................................................................................................... 2

II.    Mr. Simon's testimony is not required to warrant a new trial, but *if necessary,* he is prepared to testify and be cross-examined on relevant issues of fact. ...................................................... 7

III.    Weil had a conflict, because it represented both Mr. Simon and Insys, which actively cooperated in the prosecution of Mr. Simon. ............................................................................. 8

IV.    Weil's conflict adversely affected its performance, because Weil could not – and did not – attempt to obtain privileged information from Insys's internal investigation to use in Mr. Simon's defense and, therefore, could not effectively present a good-faith defense based on available evidence. ................................................................................................................. 10

    A.    Weil did not subpoena privileged information from Insys's internal investigation, and it could not have moved to compel compliance with such a subpoena. .................... 10

    B.    As a result, Weil could not present available evidence in support of a good-faith defense, and the jury has no reason to accept it. ............................................................. 13

V.    Mr. Simon did not waive the conflict by giving his *informed, written* consent to Weil's concurrent representation of Insys. ........................................................................................ 15

VI.    The prosecution is not entitled to discovery of privileged communications beyond those already disclosed. ................................................................................................................... 17

VII.    Mr. Simon is entitled to additional discovery from Weil and the prosecution if the Court determines his proof is not yet sufficient to warrant a new trial. ............................................. 19

CONCLUSION ..................................................................................................................... 20

CERTIFICATE OF SERVICE ............................................................................................. 21

# TABLE OF AUTHORITIES

## Cases

*United States v. Adams,* No. 09-cr-40027-FDS, 2015 U.S. Dist LEXIS 99030,
(D. Mass. Jul. 28, 2015) .......................................................................................................... 18

*Brady v. United States,* 397 U.S. 742 (1970) ............................................................................... 16

*United States v. Baskin*, 424 F.3d 1 (1st Cir. 2005) ...................................................................... 8

*Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003) .................................................................... 18

*In re Bryan*, 645 F.2d 331 (5th Cir. 1981) .................................................................................. 16

*United States v. Cardona-Vicenty*, 842 F.3d 766 (1st Cir. 2016) ................................................ 10

*United States v. Cates*, 716 F.3d 445 (7th Cir. 2013) .................................................................... 3

*Davila-Alvarez v. Escuela de Medicina Universidad Cent. de Caribe*, 257 F.3d 58
(1st Cir. 2001) ........................................................................................................................... 3

*United States v. DeCologero*, 530 F.3d 36 (1st Cir. 2008) .......................................................... 10

*Eberhart v. United States*, 546 U.S. 12 (2005) ............................................................................. 2

*United States v. Geittmann*, 733 F.2d 1419 (10th Cir. 1984) ..................................................... 16

*Graphic Communs. Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*,
270 F.3d 1 (1st Cir. 2001) ......................................................................................................... 4

*United States v. Green*, No. CR 09-311 MCA, 2012 U.S. Dist. LEXIS 190754,
(D.N.M. Feb. 14, 2012) .......................................................................................................... 3, 4

*United States v. Hazelwood*, No. 3:16-CR-20, 2018 U.S. Dist. LEXIS 161494
(E.D. Tenn. Sept. 21, 2018) ....................................................................................................... 3

*Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127 (2d Cir. 2005) ........................ 8

*Illinois v. Allen*, 397 U.S. 337 (1970) .......................................................................................... 16

*United States v. Insys Therapeutics*, No 19-cr-10191-RWZ (D. Mass.) ...................................... 12

*United States v. Jensen*, No. CR-08-054-JLQ, 2010 U.S. Dist. LEXIS 101458
(E.D. Wash. Sept. 27, 2010) ....................................................................................................... 4

*Massaro v. United States*, 538 U.S. 500 (2003) ............................................................................ 4

*United States v. Mazzaferro*, 865 F.2d 450 (1st Cir. 1989) ............................................................ 7

*United States v. Munoz*, 605 F.3d 359 (6th Cir. 2010) ............................................................ 3, 4

*United States v. Ponzo*, 853 F.3d 558 (1st Cir. 2017) ................................................................ 20

*United States v. Phillipos*, 849 F.3d 464 (1st Cir. 2017) ............................................................ 8

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380 (1993) .......................................... 3,4

*Pratt v. Philbrook*, 109 F.3d 17 (1st Cir. 1997) ........................................................................... 4

*United States v. Schwarz*, 283 F.3d 76 (2d Cir. 2002) ................................................................ 10

*United States v. Sidoo et al.,* No. 19-cr-10080-NMG (D. Mass.) ................................................. 9

*Strickland v. Washington*, 466 U.S. 668 (1984) ..................................................................... 9, 14

## Statutes and Rules

Federal Rule of Criminal Procedure 33 .................................................................................. 3, 4

Federal Rule of Criminal Procedure 45 ................................................................................... 3

Massachusetts Rule of Professional Conduct 1.7 .................................................................. *passim*

Massachusetts Rule of Professional Conduct 1.10 ...................................................................... 9

New York City Bar Association Formal Opinion 2017-6 (2017) ................................................ 13

## Other Authorities

3 Charles A. Wright et al., FED. PRAC. & PROC. CRIM. § 590 (4th ed.) .......................................... 4

## INTRODUCTION

Defendant Richard M. Simon respectfully submits this Reply to the prosecution's Response ("Resp.," ECF #977) to his Supplemental Memorandum in Support of his Motion for New Trial (re: Counsel's Conflict of Interest) ("Supp.  Mem.," ECF #974), and as pertinent, the Affidavit of Steven A. Tyrrell ("Tyrrell Aff.," ECF #975). Given those filings, certain facts and principles are beyond dispute:

- Insys actively cooperated in the prosecution of Mr. Simon, and therefore, their interests were adverse;

- When Weil began to represent Insys in restructuring and bankruptcy matters, the prosecution did not bring the conflict to the Court's attention, and the prosecution does not dispute the circumstantial inference that it was well aware of Weil's concurrent representation (notably, both the prosecution and Weil have refused to provide discovery that would confirm the inference); and

- Tyrrell advised Mr. Simon that Weil's concurrent representation of Insys meant "nothing, really" to him; when Mr. Simon raised his concerns following the WSJ's reporting about Weil's conflict, Tyrrell claimed not to know how Insys helped convict Mr. Simon; and Tyrrell still insists that the concurrent representation "did not constitute a conflict of interest."

The prosecution's argument that Weil's concurrent representation did not pose a conflict is contrary both to the law and the position the U.S. Attorney's Office, itself, has taken in the Varsity Blues cases. The fact that Tyrrell issued two subpoenas to Insys – "friendly" subpoenas, served via outside counsel, to obtain innocuous employee expense reports – does not demonstrate that he could have, as an ethical or business matter, *litigated* a *contested* subpoena to pierce Insys's assertion of attorney-client privilege over its internal investigation, in order to obtain documents that would have supported Mr. Simon's "good faith" defense. Moreover, Tyrrell's contention that he secured an *informed* waiver of the conflict from Mr. Simon makes no sense in light of Tyrrell's mistaken belief no conflict even existed.

1

As the verdict demonstrates, Mr. Simon's good-faith defense rang hollow to the jury in the absence of strong evidentiary support. The prosecution does not dispute that Weil *could* have sought evidence in support of that defense by issuing a subpoena for privileged materials from Insys's internal investigation. And the prosecution concedes, as it must, that if Mr. Simon had argued that his Sixth Amendment right to present a defense overcame Insys's interest in maintaining its common-law privilege, the interests of Mr. Simon and Inysys – both Weil clients – would have been in direct conflict. Accordingly, prejudice is presumed, and Mr. Simon is entitled to a new trial with conflict-free counsel.

This Court should allow Mr. Simon's new trial motion based on the current record, much of which neither the prosecution nor Weil has disputed and which is more than sufficient to establish that Mr. Simon was denied his constitutional right to conflict-free counsel at trial. To the extent that any further evidence may needed to establish that Weil was conflicted and that, as a result, Mr. Simon was prejudiced, this Court should order Mr. Simon's requested document discovery and hold an evidentiary hearing at which Mr. Simon may compel testimony from Tyrrell and his colleagues at Weil concerning the firm's concurrent representation of Insys as well as evidence that the government has been aware, since before the trial in this case, of the conflict issue but failed to bring it to this Court's attention.

## ARGUMENT

**I.    This Court should reject the government's request to reconsider the Order authorizing Mr. Simon's supplemental memorandum concerning trial counsel's conflict of interest, which is proper and timely.**

On August 6, 2019, this Court issued an Order (ECF #951) permitting Mr. Simon to file a supplemental memorandum raising the counsel conflict issue as a basis for a new trial. By waiting until nearly two months after the Order to raise a timeliness objection as part of merits briefing, Resp. at 2-5, the prosecution has forfeited that argument. *See Eberhart v. United States*, 546 U.S.

12, 19 (2005) (confirming that Rule 33 time requirements are "nonjurisdictional" and explaining, "where the Government failed to raise a defense of untimeliness until after the District Court had reached the merits, it forfeited that defense"). In any event, as this Court implicitly recognized in its Order, Mr. Simon timely raised the conflict issue, a species of ineffective assistance of counsel, under the "excusable neglect" prong of Fed. R. Crim. P. 45(b).

The 14-day deadline in Rule 33(b)(2) must be read together with Rule 45(b), which governs extensions of time. *See United States v. Munoz*, 605 F.3d 359, 367 (6th Cir. 2010); *United States v. Hazelwood*, No. 3:16-CR-20, 2018 U.S. Dist. LEXIS 161494, at *15-16 (E.D. Tenn. Sept. 21, 2018); *United States v. Green*, No. CR 09-311 MCA, 2012 U.S. Dist. LEXIS 190754, at *26-27 (D.N.M. Feb. 14, 2012). Specifically, "[w]hen an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made . . . after the time expires if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B); *see United States v. Cates*, 716 F.3d 445, 448 (7th Cir. 2013) ("Rule 45(b) . . . generally permits a district court to grant an extension if the defendant can demonstrate that excusable neglect caused the late filing.").

The excusable neglect standard empowers courts, "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Munoz*, 605 F.3d at 368 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388, 113 S. Ct. 1489 (1993)). The determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* (quoting *Pioneer Inv. Servs.*, 507 U.S. at 395); *see also Davila-Alvarez v. Escuela de Medicina Universidad Cent. de Caribe*, 257 F.3d 58, 64 (1st Cir. 2001) (holding the "evaluation of what constitutes excusable neglect is an equitable determination, taking into account the entire

facts and circumstances surrounding a party's omission"). The First Circuit's "somewhat elastic" standard, *Graphic Communs. Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001), reflects the Supreme Court's "forgiving attitude toward instances of 'excusable neglect,'" *Pratt v. Philbrook*, 109 F.3d 17, 22 (1st Cir. 1997), especially where the reasons for a brief delay are beyond a party's control.

In making that equitable determination, courts consider the factors that the Supreme Court identified in *Pioneer Investment Services*: (1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was in the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith. *Munoz,* 605 F.3d at 368; *see also Green*, 2012 U.S. Dist. LEXIS 190754, at *13 (citing 3 Charles A. Wright et al., FED. PRAC. & PROC. CRIM. § 590 (4th ed.)).

"[C]ourts have long made special allowances for defendants who fail to timely raise ineffective-assistance-of-counsel claims against lawyers who continue to represent them at the time those claims would properly have been raised." *Munoz*, 605 F.3d at 369 (holding that defense counsel's "continuing representation of Munoz during the window for timely filing a Rule 33 motion was a valid reason for the delay, and that the delay was not fairly within Munoz's control"); *see, e.g.*, *Green*, 2012 U.S. Dist. LEXIS 190754, at *26-27 (ruling the defendant's new trial motion was timely, because the defendant "could not have been expected to file her motion earlier, given [defense counsel]'s alleged ineffective assistance of counsel"); *United States v. Jensen*, No. CR-08-054-JLQ, 2010 U.S. Dist. LEXIS 101458, at *17, *21-22 (E.D. Wash. Sept. 27, 2010) (ruling the defendant's new trial motion was timely, because "any delay [wa]s the result of excusable neglect occasioned by the ineffective assistance of counsel"); *see generally Massaro v. United*

*States*, 538 U.S. 500, 503 (2003) (recognizing that "an attorney . . . is unlikely to raise an ineffective assistance claim against himself").

Here, the "delay" at issue was less than one week. On July 29, 2019, shortly after the WSJ ran its article about the apparent conflict arising from Weil's concurrent representation of Mr. Simon and Insys, undersigned counsel appeared as defense counsel for Mr. Simon. *See* ECF #937-38. On August 1, 2019, Tyrrell and his Weil colleagues withdrew as defense counsel. *See* ECF #940-42. Then, only two business days later, on August 5, 2019, Mr. Simon moved for leave to supplement his pending new trial motion to raise the conflict issue, *see* ECF #950. On the following day, this Court allowed that motion. *See* ECF #951. Mr. Simon and undersigned counsel have acted in good faith and with reasonable dispatch. The prosecution has not identified any prejudice from the brief delay or any impact on these proceedings.

It would be especially inappropriate to bar Mr. Simon from raising this issue because Tyrrell has never acknowledged – and continues to dispute – Weil's conflict of interest. Nor did the prosecution request a *Foster* hearing, even though it does not deny contemporaneous awareness of Weil's concurrent representation of Insys and Mr. Simon. Given those circumstances, the Court could not address the issue pre-trial and it was a certainty that Tyrrell would not raise a timely claim of ineffective assistance against himself in support of a new trial motion for his then-client.

The prosecution's argument that Mr. Simon had "all the facts necessary to raise this claim months prior to trial," Resp. at 5, is incorrect and irrelevant. Although Mr. Simon was generally aware that Weil was also representing Insys in restructuring or bankruptcy matters, he did not know – and as a non-lawyer with no experience in the criminal prosecution of corporations, he has no reason to know – that Insys was actively cooperating in this prosecution against him, or that Weil's duty of loyalty and business interests would impair it from taking action adverse to Insys.

Mr. Simon did not learn the critical facts concerning the conflict issue, which should have been readily apparent to Tyrrell and his Weil colleagues, until Mr. Simon read the WSJ article on or about July 15, 2019. That article reported that Insys had helped to convict Mr. Simon, quoted a legal scholar who discerned a clear conflict in those circumstances, and reported a statement from Weil suggesting that it no longer represented Mr. Simon. Mr. Simon's shock and dismay were evident in his email to Tyrrell a few days later in which he asked, "Can you please let me know what is going on?" Supp. Mem., Ex. I.

The opening line of Tyrrell's response, "Not sure how the company helped get you convicted," *id.*, is puzzling. Tyrrell is Co-Head of Weil's White Collar Defense, Regulatory, and Investigations practice. *See* <https://www.weil.com/people/steven-tyrrell>. He formerly served as Chief of the Fraud Section in the DOJ's Criminal Division and as an Assistant United States Attorney. He is surely familiar with the Yates Memorandum. Insys entered a DPA based on its substantial cooperation, and the DOJ lauded that cooperation in open court. As the prosecution itself notes, Resp. at 12, Insys selectively waived its attorney-client privilege and strategically disclosed inculpatory evidence to help convict Mr. Simon and his co-defendants. In his affidavit, despite his claim of ignorance, Tyrrell stated: "During trial, . . . the Government repeatedly represented that it had received inculpatory information from Insys." Tyrrell Aff., ¶ 30. And Tyrrell was present at sidebar when Kapoor's counsel said, "Insys is cooperating with the Government. Insys is adverse to the defendants at this point." 2/11/19 Tr. at 19.

It was only on July 29, 2019 when undersigned counsel appeared and after August 1, 2019, when Weil withdrew, that Mr. Simon finally had record counsel who were willing and able to raise the conflict issue in support of his new trial motion.

II.     **Mr. Simon's testimony is not required to warrant a new trial, but *if necessary,* he is prepared to testify and be cross-examined on relevant issues of fact.**

The prosecution asserts that "Simon's affidavit is the only evidence Simon provides in support of his claim of an actual conflict" and, therefore, that his motion "should not be considered until he" states that "he is willing to submit to cross-examination regarding the facts he has attempted to put in dispute." Resp. at 5-8. The prosecution's predicate proposition is incorrect, and the cases it cites are inapposite. Moreover, the prosecution does not contest Mr. Simon's argument, *see* Supp. Mem. at 17, that it, not Mr. Simon, "bears the burden of persuasion of demonstrating that the prejudice to the defendant was improbable," because the prosecution failed to bring the concurrent representation to the Court's attention, which would have permitted a pre-trial *Foster* hearing. *United States v. Mazzaferro*, 865 F.2d 450, 454 (1st Cir. 1989).

Weil's conflict of interest and the legal consequences that flow from it are readily established by documents and other evidence entirely extrinsic to Mr. Simon's declaration, including the fact of Insys's cooperation with the prosecution in this case, Weil's concurrent representation of Insys and Mr. Simon, and the engagement letters between Weil and each client. The only issue as to which Mr. Simon's testimony *might* be necessary is the question of whether he provided requisite "informed consent, confirmed in writing," Mass. R. Prof. C. 1.7(b)(4), to the concurrent representation. The Court would need to reach that issue *only* if it were to reject Mr. Simon's argument that the conflict is not waivable. *See* Supp. Mem. at 23-24.  Even then, as Mr. Simon has already explained, the advance written waiver in the Weil engagement letter is deficient as a matter of law. *See id.* at 24-26, and argument *infra*. And even crediting Tyrrell's account of his August 8, 2018 call with Mr. Simon (in which Tyrrell does not deny advising Mr. Simon that Weil's concurrent representation of Insys means "nothing, really" to him), it is undisputed that any

purported oral "informed consent" to the concurrent representation was never *confirmed in writing* as the Massachusetts ethics rules require.

Mr. Simon filed a sworn declaration with his Supplemental Memorandum in an abundance of caution to provide a full picture to the Court, but his testimony is not *necessary* to grant a new trial.[1] Nevertheless, if the Court rules otherwise, Mr. Simon is prepared to provide live testimony subject to cross-examination on relevant, disputed, issues of fact within his personal knowledge.

### III.   Weil had a conflict, because it represented both Mr. Simon and Insys, which actively cooperated in the prosecution of Mr. Simon.

The prosecution contends that there was no conflict because "Weil did not represent Insys in connection to the criminal investigation." Resp. at 8. But that does not matter, because a lawyer "may not act as an advocate in one matter against a person the lawyer represents in some other matter, *even when the matters are wholly unrelated*." Mass. R. Prof. C. 1.7, cmt. 6 (emphasis added); *see also* Supp. Mem. at 18-23. The prosecution emphasizes that much of the case law on conflicts arises from situations "where one lawyer represents two clients suing one another," which is not the situation here. Resp. at 9. But the fact that direct litigation may be the "most typical example" of conflict, Resp. at 9, does not exclude other species of conflict that do not involve litigation, as the plain language of the rules makes clear.[2]

---

[1] By contrast, in the cases cited by the prosecution, *see* Resp. at 5-8, the Court could not grant relief without crediting the defendant's testimony. *See United States v. Phillipos*, 849 F.3d 464, 469 (1st Cir. 2017) (defendant "sought to establish the requisite factual predicate for his motion [to suppress] solely on the basis of his own affidavit" and did not "identify any additional evidence."); *United States v. Baskin*, 424 F.3d 1, 3 (1st Cir. 2005) (defendant failed to offer "evidence of either a subjective or an objectively reasonable expectation of privacy in the motel room, other than his affidavit" to support his Fourth Amendment argument).

[2] The prosecution's reliance on *Hempstead Video, Inc. v. Village of Valley Stream*, 409 F.3d 127 (2d Cir. 2005), Resp. at 9, is misplaced because that case concerned the question of whether a

Even the government's jaundiced and narrow reading of the rule to require actual litigation would support a finding of conflict here: although there was, at the time of Weil's Insys engagement, no active litigation between Insys and Mr. Simon, the point is that the concurrent representation would prospectively prevent Weil from *initiating* such litigation on Mr. Simon's behalf to pierce Insys' privilege and obtain internal investigation documents. The underlying principle bears repeating as applied here: even though the two Weil teams may not have entered battle against each other, Weil's *clients*, Insys and Mr. Simon, had powerful adverse interests. Thus, Weil could not fulfill "the most basic of counsel's duties" that is, to abide by duty of loyalty to both clients. *Strickland v. Washington*, 466 U.S. 668, 692 (1984).

Ironically, in the Varsity Blues cases, the prosecution argued strenuously that Latham & Watkins' concurrent representation of U.S.C. in various unrelated, non-litigation matters posed an *unwaivable* conflict precluding its representation of individual Varsity Blues defendants, because U.S.C. was an alleged victim and/or witness. *See United States v. Sidoo*, 19-cr-10080-NMG, ECF #400 at 19-24. The prosecution only backed off this position when Latham terminated its representation of U.S.C. And even then, the prosecution viewed the ongoing potential for a conflict as sufficiently grave to propose the following question for a *Foster* hearing:

> Do you understand that while Latham & Watkins LLP no longer represents USC, the firm's ongoing ethical obligations—including duties of undivided loyalty and

---

conflict should be imputed to an attorney in an attenuated "of counsel" relationship with a firm. *See id*. at 135-136. *Hempstead Video, Inc.* therefore does not call into question the basic principle, shared across jurisdictions, that when "lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so." Mass. R. Prof. C. 1.10(a). This rule "gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm. Such situations can be considered from the premise that a firm of lawyers is essentially one lawyer for purposes of the rules governing loyalty to the client, or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated." *Id*., cmt. 6.

confidentiality—to their former client could still hamper your defense? For example, information shared by their former client (i.e., USC) during their representation, even if it could exculpate you of the charges, would not be able to be used in your defense. Moreover, Latham & Watkins LLP's duty of loyalty to its former client may continue to impact the development or advancement of defenses that, while beneficial to you, shift blame onto USC.

*See id.*, ECF #535 at 6. For the government to argue that there is no conflict in this case defies both clear legal authority and this U.S. Attorney's own position in other, current, cases. Weil's conflict was unwaivable because the concurrent representation was ongoing and "no rational defendant" in Mr. Simon's position would "knowingly and intelligently desire" Weil's representation. *United States v. Schwarz*, 283 F.3d 76, 95 (2d Cir. 2002).

**IV.     Weil's conflict adversely affected its performance, because Weil could not – and did not – attempt to obtain privileged information from Insys's internal investigation to use in Mr. Simon's defense and, therefore, could not effectively present a good-faith defense based on available evidence.**

In order to trigger the presumption of prejudice, Mr. Simon need only show that trial counsel "might plausibly have pursued an alternative defense strategy" which "was in conflict with" counsel's other "loyalties or interests. *United States v. DeCologero*, 530 F.3d 36, 77 (1st Cir. 2008). Neither trial counsel's actual, subjective thought process nor his advice to the client is relevant. Nor does it matter whether the alternative "defense would necessarily have been successful" so long as it "possessed sufficient substance to be a viable alternative." *United States v. Cardona-Vicenty*, 842 F.3d 766, 733 (1st Cir. 2016).  Mr. Simon meets that standard here.

**A.     Weil did not subpoena privileged information from Insys's internal investigation, and it could not have moved to compel compliance with such a subpoena.**

The prosecution and Tyrrell contend the "Insys engagement letter [ ] permits [Tyrrell] to act adversely to Insys in connection with the Simon matter . . . Thus, the advance conflicts waiver in the Insys engagement letter allowed [Tyrrell] and [his] team to seek and obtain discovery from

10

Insys leading up to and during Simon's criminal trial in the event [they] determined [they] needed to do so."  Resp. at 10 (quoting Tyrrell Aff., ¶ 17). The prosecution and Tyrrell are incorrect.

The generic, open-ended, advance conflict waiver in the Insys engagement letter is identical to that in Mr. Simon's engagement letter, a type of waiver that the Massachusetts Rules describe as "ordinarily ineffective." Mass. R. Prof. C. 1.7, cmt. 22; *see also* Supp. Mem. at 24-27 and authorities cited therein. The waiver is illustrated exclusively with examples of financial conflicts that provide no notice to Insys that other Weil attorneys might attack its attorney-client privilege to obtain highly sensitive corporate legal documents concerning an internal investigation by outside counsel and related advice to the board. Moreover, available evidence shows that Insys took specific measures from inception of the representation to conceal much *less* sensitive information about its legal affairs from Mr. Simon. An August 22, 2018, email thread among Tyrrell and Weil partners Ronit Berkovich and Gary Holtzer, only recently provided by Weil in response to follow-up document requests, shows that Insys specifically requested the unusual provision in its engagement letter: "[Weil] will not, however, inform Mr. Simon of the nature of the engagement for the Company or of the Weil attorneys responsible for it."  Ex. A; Supp. Mem. Ex. F.[3] Thus, it is implausible to suggest that Insys consented in advance, expressly or implicitly, to Weil pursuing discovery litigation against Insys to obtain privileged materials for Mr. Simon's defense.

---

[3] Weil did not produce the "Blacklined Insys Engagement Letter" referenced in the email thread, Ex. A, but the engagement letter provision at issue is obvious from context. Weil has refused to provide any other communications with Insys about the terms of its engagement or other understandings between the parties, and the Court should not credit Tyrrell's interpretation of what the Insys engagement letter allows without first compelling Weil to disclose such documents.

On its face, the advance conflict waiver only applies to adverse matters that are "not substantially related."  Supp. Mem., Ex. F.  That condition is not met here because the bankruptcy and criminal care closely intertwined, a fact that neither the prosecution nor Weil has contested. It was the criminal investigation that led to prosecution of Insys and its employees and that triggered the company's bankruptcy. The timing of Insys' plea agreement, only a month after the conviction of Mr. Simon and his co-defendants, was no coincidence. And the company's plea agreement provisions concerning restitution, fine, and the government's position as an *unsecured* creditor, *see United States v. Insys Therapeutics*, No 19-cr-10191-RWZ, ECF #3, were surely negotiated with the input of bankruptcy counsel. Perhaps the only reason the government would make such a concession is that it expects to become the principal owner of Insys after obtaining forfeiture of Kapoor's majority stake.

The prosecution asserts that Tyrrell "served Insys with two document subpoenas" which "undermines Mr. Simon's argument." Resp. at 10. This is a red herring. The two subpoenas in question were issued with the consent of and served upon Insys's outside counsel, Geoffrey Hobart of Covington & Burling, to obtain innocuous business records. On February 3, 2019, Tyrrell emailed Hobart:

> As you undoubtedly know, the Insys-related criminal trial in Boston is underway. Based on exhibits and witnesses the Govt has disclosed, it appears they are going to raise certain matters regarding Richard Simon's (my client) expenses during the time he was a Regional Sales Manager.  In order to respond, I need copies of Mr. Simon's expense reports and supporting materials for part of the time he was a Regional Sales Manager (October 1, 2012, through May 31, 2013). Toward that end, we have obtained a subpoena from the court that is returnable next Friday. Are you authorized to accept service for the company?  If not, I have a process server lined up to serve the subpoena in Arizona tomorrow. Please let me know how you and the company would like to proceed.

Ex. B. Hobart responded, "I can accept service and I will get the company going on its response." *Id*. Tyrrell then sent the subpoena, which requested production of "Expense Reports and

Supporting Documents for Richard M. Simon from October 1, 2012 to May 31, 2013." Ex. C. A few weeks, later, Tyrrell sent a second subpoena seeking "Expense Reports and Supporting Documents for Nathan Tyrone Rustin from October 1, 2012, to December 31, 2012." Ex. D. Tyrrell's service of these "friendly," consensual subpoenas for non-privileged expense reports, already close to the ethical line of permissible conduct against another Weil client, does not demonstrate an ability or willingness to cross that line to *litigate* discovery *disputes* against Insys or to attack its attorney-client privilege. *See* NYCBA Formal Op. 2017-6 at 3-4 (2001) (explaining that seeking discovery from one client on behalf of another is impermissibly adverse *unless* "the subpoenaed client is not burdened and has no objection.").

Even if the Weil conflict waiver could be read to permit litigation against Insys, it strains credulity to suggest that Weil would risk jeopardizing its relationship with the company (and a bankruptcy engagement many millions of dollars more lucrative than representation of Mr. Simon), by commencing litigation to pierce the attorney-client privilege protecting the very internal investigation of alleged misconduct that precipitated the company's bankruptcy in the first place. The risk, both actual and perceived, would always remain that Weil might "pull its punches" in the defense of Mr. Simon to avoid violating its duty of loyalty to Insys, thereby angering and alienating a major bankruptcy client. Thus, the conflict impaired counsel's performance.

**B.    As a result, Weil could not present available evidence in support of a good-faith defense, and the jury has no reason to accept it.**

An effort to obtain and to use privileged documents concerning Skadden's internal investigation of Insys was plainly a *potentially* viable strategy, one that Weil did not and could not pursue on Mr. Simon's behalf. This Court repeatedly recognized the relevance and importance of the missing privileged internal investigation material, and the *Stryker Biotech* case demonstrated

13

the efficacy of a strategy to obtain and deploy such evidence in defense of a former employee. *See* Supp. Mem. at 27-35.

Mr. Simon need not show that the strategy would have succeeded; the prosecution's arguments to the contrary, Resp. at 11-13, confuse the *Strickland* requirement to prove prejudice due to ineffectiveness with the presumption of prejudice based on a conflict of interest. *See United States v. Ponzo*, 853 F.3d 558, 575 (1st Cir. 2017). Nevertheless, privileged documents from Insys's internal investigation likely would have provided strong support for Mr. Simon's good faith defense whatever their content. It makes no difference whether Skadden found no criminal wrongdoing or reported problematic conduct to the Board that the company failed to remediate, because the very fact of the investigation and Mr. Simon's reasonable reliance on an expectation of appropriate legal guidance from the highest levels of the company would have defeated the prosecution's allegation of *his* criminal intent.

The prosecution contends that there is no prejudice because "Weil provided diligent and competent representation of Simon and raised a good faith defense, notwithstanding his claims to the contrary." Resp. at 11. That argument misses the point entirely, because Tyrrell never even tried to obtain the critical evidence that could have supported the good faith defense.  In his closing, Tyrrell repeatedly asserted Mr. Simon's good faith.  *See, e.g.*, 5/15/19 Tr. at 53:15-17 ("I want to close with some remarks about the evidence of his commitment to compliance during his entire time at the company."); *id*. at 62:14-19 ("Now, when Rich started, the actions that he took were in line with the strategies that were mapped out by the company's leaders and communicated to the entire sales force, and there's no evidence that Rich knew or understood that any aspect of those strategies was illegal. In other words, Rich acted completely in good faith."); *id*. at 64:16-19 ("there was no compliance team in place to tell him what he should or should not do in communicating

with his team, his seven or eight reps about how to carry out the strategy"); *id*. at 86:8-13
("Throughout his time at Insys, Rich repeatedly and consistently tried to do the right thing. He
tried to do it within the system that was in place. He didn't set that system up. He didn't decide
what people were hired for compliance, what the resources were. That was above his pay grade.
But he tried to operate within the system."). But Tyrrell did not have enough evidence to back up
his argument. Further, he did not present any argument based on Insys's internal investigation. He
could not, because he had no documents or information, nothing concrete to counter his prescient
prediction that his "cynical friend Mr. Wyshak will get up later today and . . . say that these . . .
actions around compliance are a sham and a smoke screen." *Id*. at 88:17-20.[4]

## V.    Mr. Simon did not waive the conflict by giving his *informed, written* consent to Weil's concurrent representation of Insys.

Contrary to the prosecution's assertions, Resp. at 13-14, and even crediting everything
Tyrrell says in his affidavit, Mr. Simon did not provide *informed* consent to Weil's concurrent
representation of Insys.  Further, it is undisputed that Weil failed to confirm any such purported
consent *in writing*, as the Massachusetts ethical rules require. Tyrrell's repeated and continuing
insistence that no conflict exists, and his advice that the concurrent representation means "nothing,
really" to Mr. Simon, foreclose any possible argument that Tyrrell supplied sufficient information
for Mr. Simon to intelligently waive *that very conflict*. *See* Mass. R. Prof. C. 1.7, cmt. 18
(explaining that informed consent requires explaining to the client all "the relevant circumstances

---

[4] The prosecution further argues that "Tyrrell did not even know about Insys' agreement with the Department of Justice until his associate presented the information to him in August 2018," suggesting this disproves "Insys' cooperation with DOJ affected Simon's defense." Resp. at 11. This is a non-sequitur. Mr. Simon did not argue that the official Insys settlement with DOJ somehow impaired his defense. Rather, the settlement agreement simply highlighted the adversity between Insys and Mr. Simon, which would have been obvious to an experienced former prosecutor such as Tyrrell long before the agreement itself was inked.

and reasonably foreseeable ways in which the conflict could have adverse effects on the interests of that client").

"Purported waivers of fundamental constitutional rights" — such as the Sixth Amendment right to conflict-free counsel — "are subject to the most stringent scrutiny." *United States v. Geittmann*, 733 F.2d 1419, 1423 (10th Cir. 1984) (citing *In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981)). "Valid waivers not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970). "Because of the potentially grave consequences of the waiver of fundamental constitutional rights, courts 'indulge every reasonable presumption against the loss of constitutional rights.'" *Id.* (quoting *Illinois v. Allen*, 397 U.S. 337, 343 (1970)).

The advance waiver in the January 2017 engagement letter is legally insufficient for the reasons set forth previously, Supp. Mem. at 24-27, even if the Court credits Tyrrell's questionable assertion that he "called Simon's attention to the conflicts waiver provision and explained the language to him," Tyrrell Aff., ¶ 10, and Tyrrell's even more questionable claim that he "used as an example the possibility that Weil could be engaged by Insys to provide restructuring advice or to represent it in bankruptcy." *Id.*[5] Since even Tyrrell does not suggest that he discussed with Mr.

---

[5] Contemporaneous documentation and context provide substantial reason to doubt the accuracy of Tyrrell's recollection. At the time Mr. Simon executed the engagement letter, he was living with his family in Costa Rica and communicated with Tyrrell primarily by e-mail. On January 13, 2017, Tyrrell emailed Mr. Simon: "Attached is our signed engagement letter. As discussed, I realize that you do not have the equipment to return a signed copy to me. For now, it will suffice if you could review and confirm via email that (1) the letter is acceptable and (2) you will sign the letter upon your return to the U.S. and return a signed copy to me." Ex. E.  The next day, Mr. Simon replied: "I've read the agreement and hadn't considered what happens if Insys doesn't pay the 750K they've committed to. I'll be more comfortable confirming what you requested once you have received what you need from Franc regarding my indemnification. Should I be concerned that they don't

Simon the possibility that Insys was cooperating against him or the constraints concurrent representation might impose on Weil's ability to act adversely to Insys, the discussion was plainly deficient to effect an intelligent and voluntary conflict waiver. The same is true of the August 2018 call in which Tyrrell minimized the Insys representation, telling Mr. Simon that it means "nothing, really" to him. Those discussions did not an constitute informed, effective waiver, and regardless, Weil failed thereafter to confirm any purported consent in writing, as Massachusetts rules require.

## VI.    The prosecution is not entitled to discovery of privileged communications beyond those already disclosed.

On September 12, 2019, after Mr. Simon had filed his supplemental memorandum, the prosecution demanded that Mr. Simon produce "a copy of the materials referenced in paragraph 32 of [his] motion (Doc. 974) and any other documents [ ] reference[d] in [his] papers." Ex. L. The referenced paragraph described the *entirety* of Weil's production to undersigned counsel: "over 150 gigabytes of unindexed data, including over 30,000 Weil emails and over 150,000 other electronic files of various types." Supp. Mem. at 14, ¶ 32. Undersigned counsel responded:

> We are puzzled by your request. The only privileged communications between Weil and Mr. Simon that we have revealed or put at issue are those concerning Weil's representation of Insys, and we have filed with our supplemental

---

hold their end of the deal up and pay the 750K they committed to?" Ex. F. Tyrrell responded the same day: "When I spoke with Franc over the holidays, he was clear that the company was committed up to $750,000. I'd be shocked if they changed their mind. I will send an email and try to get this nailed down over the weekend." Ex. G. After further emails concerning indemnification, on January 17, Tyrrell wrote: "Can you also confirm that you are okay with the engagement letter?" Ex. H. Mr. Simon responded: "The letter is acceptable and I will sign and return it to you upon returning to the US." Ex. I. Nothing in the e-mail exchanges suggests that the pair ever scheduled a call or communicated orally during this time, much less that they actually discussed the conflict waiver addendum to the engagement letter. Tyrrell has offered no contemporaneous notes or other documents to support his self-serving version of events. In response to a request for "[a]ll documents concerning or comprising the communication(s) in which [Weil] "called Simon's attention to the conflicts waiver provisions and explained the language to him," Ex. J, Weil's General Counsel responded: "There are no additional documents. The Tyrrell affidavit, and the attachments thereto, provide the information necessary to show Mr. Simon was directed to the conflict waiver provision of the engagement letter." Ex. K.

memorandum all documents of which we are aware comprising or concerning those communications.

There is no basis to suggest Mr. Simon has implicitly waived his attorney-client privilege on any other subject.  He certainly did not waive his privilege on all subjects for all time, and therefore, it is preposterous to suggest that your office would be entitled to his entire Weil "client file" (the "materials referenced in paragraph 32" of the motion that you request in your email).

Ex L. The prosecution later followed-up with a specific request for "any and all communications (in any form) with or by Weil regarding Mr. Simon's communications with Skadden (and its contactors, subcontractors and so on) or Insys in any capacity that relate to the availability of an advice of counsel defense," which the prosecution reprises here, Resp. at 14-18, along with a demand for "the substance of any communication withheld from the Tyrrell affidavit," *id*., apparently referring to Tyrrell's "discussions with Simon  about [ ] defense strategy," Tyrrell Aff., ¶ 5. The prosecution's assertion that a privilege waiver entitles it to communications beyond those already disclosed is unfounded.

Mr. Simon recognizes that his motion may trigger a waiver of the "attorney-client privilege to the extent that communications between him and trial counsel are relevant to prove or disprove" the claim. *United States v. Adams*, No. 09-cr-40027-FDS, 2015 U.S. Dist LEXIS 99030, *3 (D. Mass. Jul. 28, 2015) (citing, *inter alia*, *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)). However, "the scope of the privilege waiver is a fact-dependent inquiry that must be evaluated in the context of both the particular [ ] request at issue and the contours of the underlying claim." *Id.* Courts have consistently held that a "court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker,* 331 F.3d at 720 (collecting cases).

Apart from communications concerning Weil's representation of Insys, already disclosed with Mr. Simon's Supplemental Memorandum,  Mr. Simon has not revealed or put at issue, and does not intend to reveal or put at issue, any privileged communications about an "advice of

counsel defense" or other trial strategies. As the cases concerning conflicts of interest and presumed prejudice make clear, *see* Supp. Mem. at 16-18, the question is not whether Mr. Simon and Weil ever *discussed* certain strategies that Weil declined to pursue. Rather, the issue is that *potentially* viable alternative strategies *existed* in principle, which Weil could not employ due to its competing duty of loyalty to Insys.  For a conflict claim, in contrast to an ordinary ineffective assistance claim, actual communications that Weil and Mr. Simon may have had about such alternative strategies, if any, are irrelevant, as is Weil's subjective decision-making process.

**VII.   Mr. Simon is entitled to additional discovery from Weil and the prosecution if the Court determines his proof is not yet sufficient to warrant a new trial.**

Mr. Simon has already provided ample documentary support for the Court to grant his motion for new trial.  However, to the extent the Court finds the record lacking, it should order the government to produce the discovery that Mr. Simon first requested by letter dated July 31, 2019:

1.   All communications between the government and Insys Therapeutics, Inc., its affiliates (including Insys Pharma, Inc.), and its agents (including attorneys associated with Weil or Covington & Burling LLP) concerning Insys's restructuring and bankruptcy;

2.   All communications between the government and Insys, its affiliates, and its agents concerning Weil's representation of Insys or its affiliates in any matter;

3.   All communications between the government and Insys, its affiliates, and its agents concerning Insys's cooperation in this prosecution or the investigation of Insys's employees (including its former employees);

4.   All communications between the government and Insys, its affiliates, and its agents concerning Mr. Simon; and

5.   All documents and information that Insys, its affiliates, and its agents provided to the government concerning Mr. Simon.

Similarly, the Court should order Weil to produce materials also requested on July 31:

1.   All communications between Weil and Insys, its affiliates, or its agents (including attorneys from Covington & Burling LLP) concerning the

government's criminal or civil investigation of Insys (including Insys's cooperation with that investigation or any related prosecution);

2.      All communications between Weil and Insys, its affiliates, or its agents (including attorneys from Covington) concerning Insys's negotiation or acceptance of the deferred prosecution agreement with the DOJ;

3.      All communications between Weil and Insys, its affiliates, and its agents concerning Mr. Simon;

4.      All communications between Weil and the Wall Street Journal or any other media outlet concerning the firm's representation of Mr. Simon and/or Insys; and

5.      All documents and information concerning Weil's analysis of, and actions in connection to, any potential conflict between the firm's representation of Mr. Simon in his criminal matter and its concurrent representation of Insys in any restructuring, bankruptcy, or other matter.

The requested documents would demonstrate the fact and timing of the government's awareness of Weil's concurrent representation, the nature and extent of Insys's cooperation against Mr. Simon, and the interrelationships between the Insys's restructuring/bankruptcy and the criminal investigation and prosecution of the company. All such information is potentially exculpatory in that it would tend to support Mr. Simon's motion for new trial based upon his counsel's conflict of interest. *See Ponzo*, 853 F.3d at 574 ("The Sixth Amendment guarantees the right to conflict-free counsel.").

Finally, in the unlikely the Court is inclined to find that factual representations in Tyrrell's affidavit would defeat Mr. Simon's legal claims, it should first provide Mr. Simon with the opportunity to cross-examine Tyrrell under oath.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in the defendants' other post-trial memoranda, this Court should grant a new trial to Richard Simon.

20

Respectfully submitted,

**RICHARD M. SIMON**

By his attorneys,

/s/ William W. Fick
William W. Fick, Esq. (BBO #650562)
Daniel N. Marx, Esq. (BBO #674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
WFICK@FICKMARX.COM
DMARX@FICKMARX.COM

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October  15, 2019.

/s/ William W. Fick