IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RICHARD M. SIMON | No. 16-cr-10343-ADB |

**DEFENDANT RICHARD M. SIMON'S SUPPLEMENTAL
SENTENCING MEMORANDUM**

Defendant, Richard Simon, respectfully submits this short supplemental sentencing memorandum to address the Court's comments at hearings on January 13, 2020, concerning restitution, forfeiture, and sentencing considerations, as well as certain matters raised for the first time in the prosecution's sentencing memorandum concerning Mr. Simon.

**I.     Mr. Simon is less culpable than other defendants.**

At the first sentencing of a defendant in this case, the Court described what it viewed as the core criminality at issue:

> I view this to be essentially a financial crime, and I think this crime was committed because people in this business got very greedy and made poor decisions related to their pocketbook.

1/13/20 Tr. at 13. In light of that assessment, several salient points about Mr. Simon deserve emphasis.

First, Mr. Simon did not join Insys due to "greed." As his wife described eloquently in her letter, Mr. Simon sought new jobs and ultimately landed at Insys not to get rich but in order to compensate for the income lost when Mrs. Simon became unable to work due to her anxiety disorder. And numerous friends and colleagues have attested to Mr. Simon's

1

genuine enthusiasm for Subsys, an FDA approved product with real advantages over its competitors.

Second, among the defendants, as a measure of culpability, Mr. Simon benefited financially less than everyone except Lee — more than 14 times less than Babich and more than $2 million less than Gurry — reflected in the gross compensation data cited by the prosecution in its forfeiture papers:

|  | Total | Salary/Bonus | Stock |
|---|---|---|---|
| Babich [DE 1052] | $43,093,461.29 | $2,794,819.00 | $40,198,650.29 |
| Burlakoff [DE 1053] | $6,839,853.43 | $1,386,548.53 | $5,453,304.90 |
| Gurry [DE 1049] | $5,102,996.66 | $1,067,972.29 | $4,035,024.37 |
| Rowan [DE 1048] | $3,336,742.63 | $1,344,485.72 | $1,988,256.91 |
| Simon [DE 1050] | $2,989,157.72 | $1,135,269.32 | $1,853,157.72 |
| Lee [DE 1051] | $1,662,063.76 | $947,429.98 | $714,633.78 |

Third, the financial data essentially corroborate other important aspects of Mr. Simon's role:

- He joined Insys after the key elements of the conspiracy, the IRC and ISP, were already in place;

- At the time he joined Insys, the company lacked compliance training and infrastructure;

- He was never an officer of the company, did not work at the headquarters, and therefore did not participate in board meetings or other key in-person interactions among the executives;

- Notwithstanding Mr. Simon's eventual title, "National Sales Director," Burlakoff held the real authority as VP of Sales and maintained direct communications with subordinates, including Rowan and Lee (with whom he had close personal relationships) that often excluded Mr. Simon.

Thus, whether measured in dollars or more subjective criteria, Mr. Simon is less culpable than other defendants and should be sentenced accordingly.

## II.     The prosecution's allegation that Mr. Simon "may still be willingly committing fraud" is reckless and baseless.

In its sentencing memorandum [DE 1067 at 3 n.3], the prosecution alleged: "Despite his conviction on May 2, 2019, Simon may still be willingly committing fraud." In support of this extremely serious accusation, the prosecution cited the Simon family's gross assets reflected in the PSR and noted that Mr. Simon also disclosed to Probation receipt of certain California state benefits including health insurance (Medi-Cal), "food stamps" (CalFresh), and utility discounts. What the prosecutors neglected to mention is that the Simons' liabilities far exceed their assets, *compare* PSR ¶ 205 *with* ¶ 208, and they received the enumerated state benefits *only* when *both* Mr. and Mrs. Simon were unemployed, ceasing when Mrs. Simon returned to work. *See* PSR ¶ 198.

Moreover, even cursory research would have informed the prosecutors that eligibility for the benefits at issue is determined by income, alone, without regard for assets. *See, e.g.*, https://www.dhcs.ca.gov/formsandpubs/forms/Forms/MC%20Information%20Notices/MC007ENG(0414).pdf ("Medi-Cal disregards property for individuals whose eligibility is determined utilizing your Modified Adjusted Gross Income (MAGI)."); http://www.publiccounsel.org/tools/assets/files/0453.pdf ("You may qualify for CalFresh even if you have cash on hand, money in the bank, own a car, own property or have other assets. Because the asset test has been removed, struggling households can retain their assets to cushion against financial uncertainties.").

The genesis of these benefits was entirely understandable and appropriate. In July 2017, Mr. Simon's family health insurance under COBRA was about to expire. In the course of researching new health insurance options, Mrs. Simon learned that the family would qualify for Medi-Cal because neither she nor Mr. Simon had any employment income. She truthfully

disclosed requested information during the application process. The Medi-Cal case worker then suggested that the family could be eligible for other benefits such as CalFresh. Mrs. Simon did *not* apply for cash assistance (CalWorks) because that program *does* have asset limitations.

In short, at a time when the family had no employment income, facing massive legal fees and the possibility of crushing forfeiture and restitution orders, the Simons appropriately availed themselves of certain state programs they had supported and funded for years as taxpayers. When Mrs. Simon returned to work, they ceased participating in those programs. The prosecution's reckless allegation of criminal fraud in these circumstances, without any evidence, is reprehensible.

### III. Federal taxes that Mr. Simon paid 2013-2015 should be deducted from the forfeiture amount.

In light of the Court's comments and rulings on January 13, 2020, without waiving his other arguments in response to the prosecution's motion for forfeiture, Mr. Simon presents the following additional information. His 2013-2015 federal tax returns (submitted separately to both the prosecution and the Court) reflect the following:

|       | **Adjusted Gross Income** | **Total Federal Tax** | **Effective Rate** |
|-------|---------------------------|------------------------|---------------------|
| 2013  | $494,661                  | $128,451               | 25.9%               |
| 2014  | $927,607                  | $264,778               | 28.5%               |
| 2015  | $785,307                  | $257,850               | 32.8%               |
| **Total** | **$2,207,575**        | **$651,079**           | **29.5%**           |

Thus, using the methodology adopted by the Court in *United States v. Gurry*, the gross forfeiture amount should be reduced by $651,079, the total federal taxes that Mr. Simon paid.

Mr. Simon does not dispute the prosecution's gross salary/bonus/auto calculation of $1,135,269.32 [DE 1050]. As for the stock, Mr. Simon maintains that the prosecution's stock liquidation value ($1,853,888.40) should be reduced by the cost of exercising the options per the Solium Capital records ($314,976.66), yielding a pre-tax stock liquidation value of $1,538.991.74.

Accordingly, in light of the Court's rulings, the total pre-tax forfeitable amount is $2,674,261.06 ($1,135,269.32 salary/bonus/auto + $1,538.991.74 stock), minus $651,079 federal taxes paid, yielding net forfeiture of **$2,023,182.06**.

Respectfully submitted,

*/s/ William W. Fick*
William W. Fick, Esq. (BBO # 650562)
Daniel N. Marx, Esq. (BBO # 674523)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
(857) 321-8360
*wfick@fickmarx.com*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 20, 2020.

*/s/ William W. Fick*